Ruggles vs. Tyson and others.

RUGGLES, Respondent, vs. TYSON and others, Appellants.

*May 18 — June 22, 1899.*
*October 24 — November 7, 1899.*

*Equity: Parties: Estates in land: Sale: Judgment: Preservation of property according to scheme of settlement: Contingent interests: Powers: Extinguishment: Jurisdiction: Pleading: Relief: Appeal.*

1. The owners in being of real estate, for all the purposes of litigation affecting the jurisdiction of the court to deal with the whole title, stand not only for themselves but for all that may come after them; and, generally speaking, persons in being having only contingent interests are deemed to be represented by the owners of the precedent estate of inheritance.

2. By a deed reserving a life estate in the grantor, city lots were granted as follows: After his death, remainder to his daughter during her life, with power to distribute the same by will to her children living at her death and the children of her deceased children, and remainder in fee to such children and grandchildren in case of her failure to exercise the power; in case of the death of the daughter without leaving children or grandchildren, remainder to her mother for life, and remainder over, after death of the mother, in fee to the heirs at law of the grantor. Some time after the grantor's death the daughter brought suit to obtain authority to sell a part of the lots, including all estates therein, on the ground that such a sale was necessary in order to prevent a threatened destruction of such estates by tax and other liens thereon due to the improvident management of the plaintiff. Plaintiff's children (who were minors) were made parties; her mother had quitclaimed to her; and there were no other lineal descendants of the grantor, and no collateral heirs so far as known. *Held*, that the judgment of the court and its execution would act upon the whole title to the property, binding all persons having vested or contingent interests therein, present or future.

3. In such a case the court should intervene only for the purpose of preserving the property, and should disturb the scheme of the grantor only so far as may be necessary for that purpose. Its judgment should not go beyond providing for a sale of a part of the property to create a fund out of which to guard against the dangers menacing the title in remainder, and for such investment of the residue of the fund and such disposition of the property unsold as will prevent a recurrence of such dangers and as far as practicable remedy

the impairment of the estate caused by the improvident manage-
ment of the life tenant.

4. The necessities of the children will not justify, in such a case, a dis-
turbance of the scheme of the grantor, because their interests in
the estate may never ripen into an absolute title or property which
they will be entitled to enjoy. In no way, even if such children
were of full age and the life tenant should surrender her power of
appointment under the deed, could the parties, without the aid of
the court, sell the property absolutely so as to cut off the rights
of those contingently interested therein. ·

5. Whatever the necessities of the parties may be, the court cannot
break in upon the estate in remainder to relieve them, and cannot
sever the life estate from the residue of the title unless it appears
that there is no other practical way to administer the property
under the circumstances.

6. The jurisdiction of the court in such a case to grant relief by provid-
ing for the preservation of the property is not limited to the adop-
tion of the specific methods of relief prayed for in the complaint,
even in the absence of a general prayer for relief; nor is the power
of the court in respect to the subject of the action limited by any
particular object which may have been in view in its institution.

7. The property involved in such action is the whole property consti-
tuting the estate, not merely that part which plaintiff asks to have
sold, and the subject of the action is the preservation of the entire
estate for those entitled to it under the scheme of the grantor.

8. On a general appeal from the judgment of the trial court in such a
case the appellate court is not confined to an examination of the
errors assigned, but may examine and correct the judgment in every
respect where legal principles have been violated to the prejudice
of the appellants or those whom they represent, so far as such vio-
lations clearly appear from the record.

APPEAL from a judgment of the circuit court for Milwau-
kee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

Equitable action by the owner of a life estate in certain
valuable real property in the city of Milwaukee against her
minor children, the owners of the estate in remainder sub-
ject to some contingencies, to obtain judicial authority to
sell a part of such property, including all estates therein,
vested or contingent, upon the ground of a necessity so to
do in order to prevent a threatened destruction of such es-

tates by tax and other liens thereon. Proper proceedings were taken to give the court jurisdiction of the infant defendants and have them properly represented by a guardian *ad litem*. The facts set forth in the complaint are covered by the findings of fact, and the prayer for relief by the conclusions of law, filed by the trial court, which are in substance as follows:

Plaintiff's father, November 19, 1874, conveyed the property described in the complaint to trustees by deed, upon the following trusts: For the sole use of the grantor during his life; after the death of the grantor, remainder to the sole use of his daughter, the plaintiff, during her life, with power to distribute the same by her last will, in her discretion, to her children living at her death and the children of her deceased children, and remainder to such children in case of her failure to exercise the power, the trustees to convey in fee in accordance with such execution if it shall take place, otherwise to plaintiff's children living at her death and the children of any deceased child, the latter to form a class to take the share of their deceased parent by right of representation; in case of the death of plaintiff without leaving children or grandchildren, remainder to her mother for life, and remainder over, after death of the mother, in fee to the heirs at law of the grantor. The grantor died soon after the making of the trust deed.

In 1883 plaintiff was married to Benjamin H. Tyson, with whom she lived till 1895, when she was legally separated from him. There were born to plaintiff, by said marriage, defendants *Virginia C. Tyson* and *Juliet C. Tyson*, both under the age of fourteen years at the date of the findings. After the divorce plaintiff was married to George H. Ruggles, with whom she now resides at Pittsburg, Pennsylvania, and by whom she has one child, the infant defendant *Anna C. Ruggles*. Plaintiff is the sole lineal descendant of her father, and there are no collateral heirs so far as known.

Ruggles vs. Tyson and others.

Plaintiff's mother has duly quitclaimed her interest in the property to plaintiff.

Plaintiff came into possession of the property in 1882, at which time it yielded revenue sufficient to pay the taxes and support her. In 1883, soon after plaintiff's marriage with Tyson, he was permitted to take absolute control of the property, and that situation continued down to 1891, during which period, through plaintiff's inexperience, poor health, living far from the property, and confidence in Tyson, she confided the entire management thereof to him. He was an extravagant, improvident person, and so managed the property as to incumber plaintiff's life estate with leases made in such a way as to secure to himself as much immediate cash as possible, without regard to the interests of the life tenant or the owners of the estate in remainder. Some of the leases were made to run as late as 1916, the entire rental being obtained by Tyson in advance and squandered. Since 1891 plaintiff has managed the property, during which time the taxes have so increased that she has been obliged to, and has, incumbered her life estate to obtain money to pay them and to maintain herself and children, with the result that the income from the property is now only about sufficient to pay the interest on such incumbrances. The proceeds of all such incumbrances have been used to pay taxes on the property and to support herself and her children; and there are yet unpaid taxes of about $4,000 which plaintiff has no means to pay, she having exhausted her life estate in the manner indicated, and also exhausted every other resource within her reach. The value of the fee of the property is about $150,000. The owners of the estate in remainder have no property out of which they can be maintained, or out of which the taxes on the property can be paid. There is no way to save plaintiff's life estate, or the interests of those in remainder, vested and contingent, except by a sale of some part of the property, which cannot be

made to advantage unless the entire title can be conveyed to the purchaser. Plaintiff has paid out upwards of $5,000 in maintaining and caring for her children, and she has no resources out of which to continue such care. Lots 4, 6, and 7, in block 127, and lot 15 of block 120, are the most available portions of the property for an immediate cash sale. Such lots have a salable value of about $40,000; the remaining property is worth about $110,000.

The court has jurisdiction of the entire title to the property, and of all persons interested therein, or that may be interested, whether as owners of precedent or dependent, vested or contingent, estates, for the purposes of this action. Plaintiff owns a life estate in the property, and the defendants a vested estate in remainder, subject to be opened to admit future children of plaintiff, and subject to be divested by the execution of plaintiff's power to devise the property in fee to her children in her discretion, and subject further to be divested by the death of all plaintiff's children without living issue. It is not known whether there are persons to take the estate in case the contingency shall arise upon which it will go to the heirs at law of plaintiff's father, nor is it necessary that the facts in that regard should be known in order that the court may control the entire title. The court has power to direct a sale and conveyance of any part of the property that may be necessary for the benefit and protection of the estate, in such manner as may be deemed best, conveying to the purchaser the entire title. Plaintiff should have judgment for the sale of lots 4, 6, and 7 in block 127, in the Second ward of the city of Milwaukee, and lot 15 in block 120 of such ward, for the purposes of this action. A person should be appointed trustee to make the sale under the direction of the court and convey the property to the purchaser. The expenses, costs, charges, and disbursements, past and future, in any way connected with the action, should be paid out of the general fund. The value of the

plaintiff's life estate should be computed according to standard annuity tables, out of which the trustee should see that all tax claims of every nature are paid. The value of plaintiff's life estate, less the disbursements for tax liens, and $5,000 for past care and maintenance of the two oldest minor children, should be paid to the plaintiff. The balance of the fund should be invested for the defendants according to their interests therein, *Virginia C.* and *Juliet C. Tyson* being each charged with $2,500 paid to plaintiff. The sums so invested for the benefit of the defendants should be disbursed, principal and interest, as the court may from time to time direct.

Judgment was entered accordingly with appropriate details for carrying out its provisions. From that judgment the defendants appeal.

For the appellants there was a brief by *Rollin B. Mallory,* guardian *ad litem* and general guardian, and *Edward S. Bragg,* of counsel, and oral argument by *Mr. Mallory.*

For the respondent there was a brief by *Quarles, Spence & Quarles,* and oral argument by *T. W. Spence.*

The following opinion was filed June 22, 1899:

MARSHALL, J. There does not appear to be any serious, if any, controversy between the parties to this cause. While the attitude of counsel for appellants and respondent is in form adversary, all appear in fact to contend for a declaration by this court that the judgment appealed from is right and binding upon all persons interested in the property and that a sale of it made pursuant to such judgment will entitle the purchaser to an absolute title in fee simple thereto. No question seems to be raised by the learned counsel who appears as guardian *ad litem* for the infant defendants but that the judgment rendered was proper, but he deems it important that a final adjudication by this court should be had as regards the binding force of the decree

Ruggles vs. Tyson and others.

upon persons not before the court otherwise than as represented by those in whom the immediate estate in remainder is vested, in order that the property may be sold under such circumstances that the price obtained will not be affected by any suspicion as to whether the purchaser will take a full title thereto. In that counsel for respondent agree. Notwithstanding the harmony indicated, in view of the fact that the defendants are infants and the title vested in them, in whole or in part, may go over to persons not now in being, the examination of the result in the court below must include the subject of whether the proper judgment was rendered on the facts found, both as to its binding force on all persons having vested or contingent interests in the property, and as to the disposition of the proceeds of the proposed sale.

As to whether the judgment acts on the whole title, it is considered that the owners in being of real estate, for all the purposes of litigation affecting the jurisdiction of the court to deal with the whole title, stand not only for themselves, but for all that may come after them. The rule is universal, and, generally speaking, persons in being having only contingent interests are deemed to be represented by the owners of the precedent estate of inheritance, for the purposes of litigation. To that general rule there are some exceptions not necessary to be noted in this opinion, as they do not apply to this case. The owner of the life estate here, and the owners of the estate in remainder, all being parties, the judgment of the court and its execution will act upon the whole title to the property, binding all persons having vested or contingent interests therein, present or future. It is often said that such is the rule as a matter of convenience or necessity, but suffice it to say that it is a rule of law as inflexibly binding upon property in lands as any principle that has received judicial sanction so long as not to be open to question. Calvert, Parties, 48; Mitford, Pl.

173; 2 Spence, Eq. Jur. 707; 1 Smith, Ch. Pr. 92; Story, Eq. Pl. (Redf. ed.), § 144; Barb. Parties (2d ed.), 488–9; *Nodine v. Greenfield,* 7 Paige, 544; *Mead v. Mitchell,* 17 N. Y. 210; *McArthur v. Scott,* 113 U. S. 340; 17 Am. & Eng. Ency. of Law, 728; *Hale v. Hale,* 146 Ill. 227; *Gavin v. Curtin,* 171 Ill. 640; *Kent v. Church of St. Michael,* 136 N. Y. 10; *Kirk v. Kirk,* 137 N. Y. 510.

As to whether the judgment improperly disturbs the suspension of the power of alienation as to the property in question, the creator of the life estate for plaintiff and the estate in remainder for her children had an undoubted right to place the title to his property beyond the power of any person acting for the owners of the estate in remainder to prevent it going to them *in specie,* and his wishes in that regard must be carried out so far as possible. It is not doubted but that the powers of a court of equity are ample to prevent the destruction of the estate in remainder under the circumstances of this case. Rather than that the scheme of the creator of such estate shall entirely fail by reason of some circumstance not foreseen by him and provided for, the court may intervene, but only for the purpose of preserving, and so far as necessary to preserve, the property. If it cannot be preserved in the form intended, it may be preserved in its equivalent. It is not the interests of those in remainder, as such interests may appear to the court, that are to be considered and conserved, but their interests as the creator of the estate in remainder provided for them. So the fact, if it be a fact, that it would be for the best interests of the infant owners of the estate in remainder to allow them an immediate benefit therefrom to maintain and educate them, does not warrant a disturbance of the scheme intended to postpone such benefit to a later time. It is the necessity that something shall be done to guard against the danger that the title in remainder may be prevented from reaching

defendants in possession at all, which calls into activity the equity power of the court.

In *Bofil v. Fisher*, 3 Rich. Eq. 1, upon which much reliance is placed by respondent's counsel, whether the court possessed equity powers to act under such circumstances as we have in this case, was considered and decided in the affirmative. True, it appears by the statement of the case and some things said in the opinion, that in adjudging the sale in the court below and affirming the judgment on appeal the interests of the life tenant and of the owners of the estate in remainder, as regards immediate enjoyment of the subject of the suit, was considered, but the sole question presented and decided on appeal was whether the court possessed power to bar, by its decree, the unborn and absent contingent remaindermen. No question as to the proper distribution of the fund arising from the sale was considered or decided.

In *Hale v. Hale*, 146 Ill. 227, the court decided, in effect, that for the purpose of preserving the estate for those ultimately entitled thereto, the court could authorize the conversion of property of one kind into that of another, and the holding of the latter as the equivalent of the former. In *Gavin v. Curtin*, 171 Ill. 640, also cited by respondent, a case quite similar to the one before us, the court directed a sale of the property for the purpose of preserving the estate of the life tenant, and that of the remaindermen as well, from being divested by tax liens and a mortgage to which both estates were subject, it appearing that the income from the property was not sufficient to keep down the interest and taxes, and that the improvements were likely to go to waste for want of necessary repairs. The power of equity to furnish an adequate remedy to meet the necessities of the situation was held to be beyond reasonable controversy, but that the remedy in such case should be adapted to the preservation of the property and be limited to that. In such

an emergency the court is required to stand in the place of the creator of the estates, and do what he would have authorized had he anticipated the exigencies rendering some change in his scheme necessary in order to prevent the loss of the subject of it.

Probably no case can be found that goes further than those referred to. The rule they recognize being one of necessity, its scope is obviously limited by the purpose which calls for its application, that of preserving the subject and title of the estate. For that purpose the scheme of the creator of the estates may be invaded and varied by changing property which in one form is liable to be lost, into another form not subject to that danger, the property in its new form to be devoted to the same use and to go in the same line, upon the same contingencies, as that for which it was taken in exchange,— not to be distributed and consumed. No necessity of preservation calls for such a remedy as consumption of the property and entire annihilation of the grantor's scheme.

It follows that the judgment appealed from, so far as it goes beyond providing for the sale of a part of the property to create a fund out of which to guard against those dangers that now menace the title in remainder, and for such investments of the residue of the fund and such disposition of the property unsold as will prevent a recurrence of such dangers and as far as practicable remedy the impairment of the estate caused by the improvident management by the life tenant, must be modified. There is no justification for distributing the proceeds of a sale as was attempted by the judgment appealed from. By such judgment the interest of the life tenant is to be computed and paid to her, whereas the scheme of her father entitles her to the income of the whole property for life, subject to those duties in respect to keeping up repairs and keeping down taxes which devolve upon a life tenant by law. The judgment authorizes the division

of the remainder of the fund, after deducting the expenses of the litigation and the value of plaintiff's life estate, into three parts, and the immediate payment of $5,000 out of two of the shares to discharge a supposed equitable claim of the plaintiff for the past support of the oldest children. It was not intended that either of the defendants should have any part of the *corpus* of the property till it should reach them under the will of their mother or by reason of her death without devising the property. What part of the property either of the defendants will finally have is uncertain. Each has a vested interest, but it is subject to be divested by the will of the mother or be diminished by the future birth of children. To compute the value of the estate in remainder, as represented by the proceeds of the sale of the property, and make a present division of it, would be erroneous in the extreme.

Just what, from an equitable and business standpoint, looking only to the purpose to be conserved, should be done under the circumstances of this case, is by no means clear; but it is plain that nothing should be done for the purpose of a present distribution and enjoyment of the property, since it was designed to be kept *in solido* till the time for distribution fixed by plaintiff's father. The fact that she has imprudently so handled the property as to prejudice her interests and those of the defendants as well, cannot change her father's scheme in law or in equity so as to give anything more to her than he designed she should have, or give her that in a different way than he designed she should receive it, to the prejudice of the estate in remainder. She was entitled to the income of the property during her life and was bound, out of such income, to preserve the property from loss by taxes or want of repairs. Having put it out of her power to perform such duty, and demonstrated most clearly that the interests of those to come after her should be guarded by a stronger hand, the necessity of fortifying

against the recurrence of the present difficulty is quite as important as overcoming such difficulty. Before the commencement of this action plaintiff incumbered her life estate to such an extent that the interest on the mortgage indebtedness absorbs the entire income from the property, leaving nothing with which to pay the taxes. If she used the income to keep down taxes she was liable to lose her life estate by the enforcement of the mortgages; if she used the income to keep down interest on the mortgages, and let the taxes go, she was liable to sacrifice the whole estate. In meeting that situation it is deemed best that the mortgages on the life estate should be controlled by investing so much of the fund as may arise from any sale that may be made as shall be necessary to buy them in for the benefit of all persons interested in the estate, the amount so used to be returned to the fund as fast as can be from the future income from the property, the end to be attained being to preserve the property *in solido* till the termination of the life estate. The entire fund created by the sale of any part of the property, so far as practicable, should be preserved in lieu of such part. The necessary use of some of the fund to pay such expenses of the litigation as plaintiff ought to pay, or to pay the taxes, should be returned to the fund as fast as practicable out of the income, keeping in view that such fund should be held to the same use and subject to the same final distribution as the benefactor intended. It is considered that the end which the decree should aim to secure can be most certainly accomplished by vesting the title in fee, and the control of all the property, that to be sold and that not to be sold as well, in a suitable trustee, to be hereafter administered under the direction of the court; that the trustee should be required to give a suitable bond to secure the faithful performance of his duties, as indicated in the judgment appealed from; that the property directed to be sold by such judgment should be sold as therein indicated; that

Ruggles vs. Tyson and others.

out of the proceeds of the sale there should be paid appel-lants' costs, disbursements, and expenses in this litigation, such part as are taxable as costs against respondent to be charged to her by the trustee to be subsequently repaid as hereafter indicated; that there should also be paid and charged to respondent, to be returned as hereafter indicated, all outstanding tax claims against the property; that any lien or lienable claim on the estate in remainder should be paid from the fund, permanently reducing it that amount; that the balance of the fund should be invested, first, by buying in for the benefit of the fund the mortgage incum-brances placed on respondent's life estate before this action was commenced, with the indebtedness secured thereby; and that the residue of the fund should be invested in good in-terest-bearing securities subject to the approval of the court. The trustee should disburse the income from the invested fund, and the rents from the remaining realty, first, by pay-ing current expenses of administering the trust, and taxes, and insurance; second, by adding to the invested fund the amount of the charges against plaintiff for taxes and other matters paid for her account; third, by freeing the invested fund of the indebtedness of plaintiff, secured by the mort-gages on her life estate; fourth, by paying the balance to respondent. The result will be that after the invested fund shall have been increased to the amount paid for plaintiff's account, and be freed from her indebtedness secured on her life estate, the entire income from the invested fund, and the remaining real estate as well, less sufficient to keep up repairs and taxes and pay for administering the trust, will go to the respondent. She will have the benefit of the entire income from all the property, as was originally designed, but such income will be devoted to the discharge of her ob-ligations to the property till they shall be extinguished.

*By the Court.*— The judgment of the circuit court is re-versed, and the cause remanded with directions to render judgment in accordance with this opinion.

The respondent moved for a rehearing.

In support of the motion there were separate briefs by *Edward S. Bragg*, of counsel for the infant defendants and guardian, and *T. W. Spence*, of counsel for the respondent.

The motion was granted September 26, 1899.

The cause was reargued October 24, 1899.

*Edward S. Bragg* and *Rollin B. Mallory*, for the appellants.  [No brief on file.]

*T. W. Spence*, of counsel, for the respondent.

The following opinion was filed November 7, 1899:

MARSHALL, J.  A rehearing was granted in this case on one question; namely, What is the most practicable and just method, from a business standpoint, conformable to the law as settled in the decision rendered, of saving the estate from loss without unnecessarily varying the plan of the grantor under which all parties claim?  It needs but little attention to the language of the question to discern that the result of the motion for a rehearing was to leave the legal principles, upon which the decision of the court was grounded, irrevocably closed.  Nevertheless counsel for appellants assumed the privilege of going into the whole case in the reargument, and were permitted to do so; and while what we may say now outside of the question for consideration cannot affect the result, because of the importance of the subject reference will be made to some of the learned counsel's contentions.

It is said that the only property involved in the action was four lots, not the whole property constituting the estate; that the primary object of the action was to obtain an adjudication respecting the power of the court to authorize a sale of real estate circumstanced like that in question, so as to bar possible remaindermen; that the remainder, after the expiration of the life estate, is vested in the appellants; that if they were of age they could sell such remain-

der without the aid of the court, and that the life tenant can do the same; hence the court went beyond the scope of the action in laying hold of the entire property and administering it.

In the first place the court is by no means bound by the object or objects in view in instituting an action, except so far as such objects are legitimate from a legal standpoint. If there be one object which is legitimate, and it be sought for the purpose of carrying out others not legitimate, however praiseworthy be the motives from a philanthropic or moral standpoint, especially if such other objects affect the interests of infants or persons unknown who are liable, on the happening of a possible contingency, to be interested, it is not only proper, but it is the duty of the court, to so guard its decree upon the primary question, that the effect of it will be in all respects legitimate.   It is not within the power of counsel for one party, or both acting together, to tie the hands of the court in the exercise of its equity powers to effect justice as to any question coming within the scope of any subject presented for consideration and decision.

In the second place, the subject of the action, not any particular object counsel may have had in view, fixed the limits of the field which the court had to investigate. What was that subject?   The sale of any particular lot or lots? Certainly not.   Obtaining money to satisfy the personal necessities of the respondent and her children?   Certainly not.   The power of the court to sell real estate of minors and use the proceeds for their maintenance?   Not that. Yet the several questions mentioned have been repeatedly pressed upon our attention, both to support the judgment appealed from and obtain a change of the directions of the court as to the proper decree.   The subject of the action was the necessity of a change in the form of property the title and use of which was vested for life in one person who appeared as plaintiff, and the residue of the title was vested

in other persons, made defendants as representing such residue for all parties, who might on any contingency be entitled thereto upon the termination of the particular estate. Concurrent action of the parties in whom the title was vested, without the aid of the court, could not pass a full marketable title to the property; and that seemed to be necessary in order that a part of it at least might be sold for a full value and sufficient of the proceeds used to pay off liens which jeopardized the interests of all parties. The complaint spread before the court the condition of the estate, confessing but excusing, so far as intentional wrong-doing was concerned, guilt of waste by the life tenant, setting forth the dangers which her management had created and which threatened to take the estate away from all interested under the common benefactor; and her inability, unaided by the court, to successfully cope with the situation. The court was asked to exercise its extraordinary powers by taking hold of the entire property and applying an effective remedy. Specific methods of relief were suggested and prayed for, going more to the use of the property so as to remedy the necessities of the unfortunate plaintiff and her children than that of saving the estate from destruction. The court was by no means bound to grant relief by adopting such methods, or dismiss the action, even in the absence of a general prayer for relief. The preservation of the entire property was the subject to be dealt with, so the life tenant, in her bill, prayed, among other things, that the court would do what in its judgment might seem meet and agreeable to equity. That expressly placed the entire title to the property under the control of the court, as it was any way, from the very nature of the action and of the facts. While the principle, that the court has power, by an action *in rem*, to preserve property under such circumstances, disregarding the mere form of it when that appears to be necessary, was invoked, that special jurisdiction seems to have

been entirely lost sight of in the effort to convert the property into money and use the proceeds to alleviate, in part, the pressing necessities of the parties to the action.

In the third place, it is not true that if the appellants were of age they could sell the estate without the aid of the court. They could sell their interests in the estate, that is all. Such interests may never ripen into an absolute title or property the appellants will be entitled to enjoy. That does not seem to have been appreciated, hence the pressing necessities of the respondent, in fact of all the parties to the action, have been urged as a justification for disturbing the scheme of the settlor of the estates by taking property for the benefit of the appellants, and of the respondent as well, which does not now, and may never, belong to either of them. Who can now point to the person who will ultimately be entitled to the estate in remainder? What can justify such judicial proceedings as that of taking and using part of it for the benefit of a mere trustee of the title, who, by the happening of any one of several possible contingencies, may be divested of such title and it be vested in another with absolute power of enjoyment and disposal? This court has no such power. It may bar remaindermen as to the particular thing, but cannot extinguish their rights in the equivalent of the property. This is not an action for the adjudication of the rights of either party, represented before the court, in the title to the property, but an action to authorize the preservation of it in the form of an equivalent of property in some other form.

If it were true that if the appellants were of age they, joining with the life tenant, could dispose of the entire property absolutely, the simple question before the court would be whether it is for the best interests of the appellants that their property should be sold and a part of it used for their benefit during their minority. To support the power of a court of equity to do that, no reference to judicial au-

Ruggles vs. Tyson and others.

thorities reaching back a century would be necessary, inas-much as it is amply provided for by statute.

It is said the only relief prayed for not covered by statute is the right to apply the proceeds of the estate in remainder to relieve the necessities of the minors, and to reimburse the respondent for money paid out for their use over and above her income from the life estate; that in the action she ten-dered a surrender of her power of appointment under the settlor's deed, and that by such means the several estates can be united and sold and the proceeds appropriated, as held by authorities, ancient and modern. On the first part of the proposition, as we have seen, the scope of the prayer for spe-cific relief in the complaint by no means limits the jurisdic-tion of the court. On the facts found and the pleadings, the trial court pronounced judgment. A general appeal from that judgment presented to this court the question of whether it was proper on the undisputed facts. Judicial inquiry was not, by any means, circumscribed by the assignment of er-rors. It was and is limited only by duty to examine and correct the judgment in every respect where legal princi-ples were violated to the prejudice of the appellants or those whom they represent, so far as such violations clearly ap-pear from the record. Appellants are minors standing as the mere representatives of a title liable to pass out of them to others in spite of anything they or the life tenant or the court can possibly do. On the second part of the proposi-tion under discussion, it must be said that we are not ac-quainted with any authority, ancient or modern, to support it. Those cited to our attention do not apply, and it is firmly established, both at common law and by statute, that a spe-cial power, to be executed by will, cannot be executed in any other way, or be released or extinguished so as to cut off a taker not participating in the extinguishment and who is entitled to take in case the power be not executed in the manner provided by the donor of the power. The power

may be extinguished by a conveyance by the donee and life tenant to the holders of the estate in remainder in respect to whom such donee has the power of appointment so as to give a preference of one over another; or it may be extinguished by the holder of the life estate joining with the holders of the estate in remainder in a conveyance to a third person; but the effect of such a circumstance is by no means so far-reaching as to give the vendee under the joint deed a greater title than that possessed by the vendors. If such title be defeasible, the title of the vendee will be subject to the same infirmity. If the title be liable, upon the happening of a contingency, to go over to other persons, their interests will not be affected by the conveyance. The latter circumstance, which controls the situation dealt with in this case, is what makes the proposition urged upon us unsound and the authorities cited to support it not applicable. We may conclusively point what is here said by a brief reference to such authorities.

In *Matter of Bostwick*, 4 Johns. Ch. 100, the proposition decided was that when the income of a sum of money is devised to a mother, and the principal sum after her death to her children, the property may, by permission of the court, be broken in upon and used in part for the present education and maintenance of the children, and to pay debts previously contracted by the mother for their past maintenance, where there is an actual necessity therefor that cannot otherwise be satisfied. It will be noted that the title to the principal sum in remainder, in that case, was in the children absolutely. To support the decision, *Harvey v. Harvey*, 2 P. Wms. 21, was cited, where it was said "the Master of the Rolls declared that where a legacy was given to an infant payable at twenty-one, *without any devise over*, the doctrine indicated was proper."

In *Matter of Burke*, 4 Sandf. Ch. 618, the facts were that two infant children, living with their father, had an annual

income consisting of the use of $60,000, the principal being vested in them contingent upon their reaching the age of twenty-one, otherwise in the survivor of them, and if neither reached such age, then over to the brothers of the mother and their issue. The question was how much the father, who possessed but a moderate income, ought to have out of the income belonging to the children toward their support and education. No suggestion is found in the opinion of the court of a right to break in upon the principal sum, which was conditionally vested in the daughters. In *Wooten v. House* (Tenn. Ch. App.), 36 S. W. Rep. 932; *McKnight's Ex'rs v. Walsh*, 23 N. J. Eq. 136; *Wilkes v. Rogers*, 6 Johns. 566; and *Billingsley v. Critchet*, 1 Brown, Ch. 268, the infant child or children had a fortune absolute. There was no devise over, or right of survivorship. It was held that the necessities of the children might be supplied out of the property.

It will readily be seen from the foregoing brief analysis of authorities that they do not. touch the question under discussion here. The distinction between such question and the one we have decided here is clearly pointed out in numerous English cases, holding that if there is an estate with a devise over which may take effect on a contingency, such estate cannot be used for the benefit of the precedent holder without the consent of the contingent devisee or vendee. *Greenwell v. Greenwell*, 5 Ves. 194; *Fairman v. Green*, 10 Ves. 45; *Lomax v. Lomax*, 11 Ves. 48; *Errington v. Chapman*, 12 Ves. 20; *Errat v. Barlow*, 14 Ves. 202. In *Greenwell v. Greenwell*, the object was the same as that sought here. The title was in the grandchild to be preserved and, with the accumulations, paid to him on his arriving at the age of twenty-one, and with like limitations over to his sisters in case of his death under that age. The father was dead and the children sorely in need of assistance because of the character and circumstances of the

mother.   The Lord Chancellor remarked, " I fear if I should make a decree it would be my will and not that of the testator's."   In view of the pressing necessities of the case it was decided to make the order prayed for *conditional upon consent being given by all persons who would be contingently entitled to the property.*

In *Fairman v. Green,* the Master of the Rolls said on the same subject, " The court has not done this except where all the parties who are to have maintenance were equally interested, and if there was a legatee over the court has always taken the consent of such legatee."

Again in *Lomax v. Lomax,* the Lord Chancellor said: " If all die under twenty-one and a child not yet in existence should come into existence and attain that age, that child clearly would take the whole, therefore I may give it to those children (if I grant the prayer) who may never become entitled to it."   And in the same line, in *Errat v. Barlow,* the conclusion was stated, in effect, thus: ' If the chance of surviving is equal among all the members of the class, and there is no other interested that upon any contingency can take that will be prejudiced, maintenance, when necessary, may be allowed, but it is impossible to give it where, in any event, the property may belong, ultimately, to other persons.'

The foregoing is the settled law as far back as we find adjudicated cases on the subject.   They are in accordance with reason and common sense.   Any other doctrine would sanction confiscation and render it impossible to settle an estate upon any plan that would, in any reasonable probability, be carried out according to the scheme of the settlor. A failure to keep in mind the distinction between taking the property of an infant and expending it for his benefit, and taking property to which such infant has a mere naked legal title, which may go over in possession and enjoyment to some other person, is what has led to most of the difficulties:

Ruggles vs. Tyson and others.

in this case. It must not be forgotten, at any step in this litigation, *or in administering the final decree that shall be rendered,* that plaintiff has but a life. estate, coupled with a power of appointment by will to say how the estate in remainder shall be divided between her surviving children in whom the immediate estate in remainder is vested, in case she leaves surviving children, such children to take equally if the donee of the power fails to execute it, and the estate to go over to others specified by the settlor in case of there being none of the immediate remaindermen to take. While that is a special discretionary power which, by the rules of the common law, may be separated from the life estate, the settlor having failed to provide clearly to the contrary, or extinguished as to any person interested by a conveyance by such person or by a joint conveyance by such person and the life tenant to another (Lewin, Trusts (10th ed.), 725; Pingrey, Real Prop. § 1124; 2 Washb. Real Prop. 308, 309), it cannot be extinguished so as to cut off persons not participating, or executed at any other time or in any other manner than that indicated by the settlor. When authority to execute a power by will is given, it is exclusive, by the rules of the common law as well as by statute. Pingrey, Real Prop. 1118; 1 Lewin, Trusts (ed. 1888), *616; 2 Perry, Trusts, § 511*b*; sec. 2146, Stats. 1898.

Finally, we are referred to *Ex parte Yancey,* 124 N. C. 151, as conclusive — so far as the decision of the highest court of one state can be considered conclusive on a question in the courts of another state — on the point that the life tenant and the holders of the title in remainder may, joining, convey the title, notwithstanding the future birth of a child may add to the class entitled to take under the deed or will after the expiration of the life estate. A moment's examination of the case shows that the court only held that where all the remaindermen in being are before the court, a sale of a full title may be authorized though

there may be possibilities as to others being ultimately entitled to participate in the avails of the property as members of the class, the property, however, to be preserved in its new form for the benefit of those ultimately entitled thereto. That is what was decided in this case. The North Carolina court, however, held that where there is a right of survivorship, as here, between members of a class, the court cannot authorize a sale at all, because the ultimate takers in that event cannot be known. That doctrine, applied here, would defeat the whole object of this litigation; but that it is wrong in part seems clear, and is demonstrated by several well-considered cases cited in our former opinion. There is no good reason for saying that the court may authorize the sale of lands where the title in remainder is vested in a class which is subject to open and let in new members, but cannot if the scheme laid in the will or deed be such that members of the class may drop out and their interests go to the surviving members thereof. The theory, as before indicated, upon which the court takes jurisdiction, is that the proceeding is *in rem*, and that those having the vested interests stand for those having contingent interests. In that view, whether there be a contingency which will increase the class, or one which will decrease it or extinguish it altogether, should make no difference, since it is the *res* that is being dealt with and is to be preserved unimpaired in value for the ultimate taker or takers. However, it is the settled doctrine in North Carolina that a court of equity has no power to authorize a sale of property held by a title which may be divested by the happening of some contingency and the title thereby be vested in another not in being or that cannot be known. *Justice v. Guion*, 76 N. C. 442; *Watson v. Watson*, 3 Jones, Eq. 400; *Williams v. Hassell*, 74 N. C. 434. It will be noticed, in examining these cases, that the only power of the court suggested was to convert property from one form into another for the pur-

pose of preserving it or to increase its value, not distribut-
ing it so as to prejudice the possible remaindermen; and
even that was denied where the property was held by mem-
bers of a class with the right of survivorship in case of a
member dropping out by death.

The foregoing review of authorities cited by counsel to
support the contention for a decree allowing a partial dis-
tribution and consumption of the property in question, and
citation of authorities to the contrary, with what was said
in the former opinion, we apprehend, show clearly the sound-
ness of the conclusion which was reached.

When the danger of loss to the estate shall have been se-
curely fortified against, there is no reason why the equiva-
lent of any of the property that shall have been sold, and
the unsold lands, should not be used so as to provide for the
respondent and her children so far as such provision may be
consistent with a certain preservation of the property for the
ultimate takers upon the expiration of the particular estate.
Whatever the necessities of the parties may be, the court
cannot break in upon the estate in remainder to relieve them,
and cannot sever the life estate from the residue of the title
unless it appears that there is no other practical way to ad-
minister the property under the circumstances.  The fact
that where by a deed or will the life tenant and the re-
maindermen are left free to convey the entire title, in case
of a sale made by order of the court the value of the life in-
terest may be computed upon the basis of the expectancy of
life of the life tenant and paid over to such tenant, is not
very persuasive in a case like this where the interests of the
parties are not separable without a clear violation of the ex-
pressed will of the common benefactor.  While the life ten-
ant, in the instant case, is competent to sell her interest so
as to separate it from the power of appointment, she has no
authority to separate her estate from the estate in remainder,

and she should not be given that power by the court without
some overpowering necessity existing to demand it, because
that course would substitute a mere expectancy for a cer-
tainty, contrary to one of the most important features of the
settlor's scheme.  The firm adherence of the court to the
legal principles indicated is by no means inconsistent with
anxious solicitude to relieve the misfortunes of the parties
to this action so far as power exists in the court to do so,
and that solicitude has been entertained here from the first.
The situation mentioned, however, cannot obscure the fact
that the respondent is responsible, before the law, for the
dangers which necessitate the change in the property in
question which has been directed by the court.  The decision
of the cause, with directions made to remedy the dangers
which exist and guard against a recurrence of similar dan-
gers in the future, was intended to be for the best interests
of all concerned so far as such interests could be legally con-
served.

The directions made as to the decree to be rendered in the
court below were not intended to, and did not, differ from
the judgment appealed from so far as relates to the mere
machinery of selling and conveying the property.  That
whole subject, as well as the handling of the proceeds of the
sale, within the limits of the plan outlined by the decision,
was left expressly and plainly to be administered by the
trial court.  There is nothing in such decision preventing a
new loan upon the life estate by permission of the trial court
under the directions of the trustee for the purpose of taking
up incumbrances bearing a high rate of interest, bought in
for the benefit of the estate, or preventing a reduction in the
rate of interest on such incumbrances if found to be too high,
or changing any mere matter of administration so far as the
same relates to the making of a proper deed to carry out
the sale, if one shall be made.  So in respect to the matters

referred to, no modification in the decision heretofore made by this court is needed to meet the objections raised on the reargument.

The subject of what change can properly and safely be made in the manner of handling that portion of the estate which will be represented by the proceeds of the four lots, in case of their sale, and the care of the residue of the estate, from the directions contained in the former decision, has received the most careful consideration, resulting in a conclusion that the life estate ought not to be separated from the estate in remainder, but that, if respondent desires to substitute insurance upon her life in reputable level premium insurance companies, payable to the trustee for the remaindermen at her death, in place of her liabilities to the estate, that will accumulate in the hands of the trustee by a carrying out of the directions in such decision, she may properly be allowed to do so to an amount equal to that which would go to her upon a separation of her life interest in the proceeds of the sale of the four lots, if she adequately secures the payment of the premiums upon the policies of insurance, as such premiums fall due, and also secures the remaindermen by a mortgage on her life estate in the unsold property to their trustee, the prompt payment of future taxes on the property, and that, in the event of her taking advantage of this privilege, the unsold property should be released from the trust created by the decree. It has been concluded to make an addition to the directions contained in the decision heretofore made, in accordance with these views, thereby practically adopting a suggestion made by appellants' counsel on the argument. That will result, if respondent so elects, in giving the trustee for the remaindermen, insurance for such money as may be paid out of the proceeds of the property sold, for her account, a return of the unsold property to the control of the respondent, as life tenant, and in securing to her a net income of about $1,500

per year as the property is now circumstanced, which will doubtless be largely increased as improvident leases shall expire. No other modification of the decision of record seems advisable.

*By the Court.*— The directions for the entry of a decree in the trial court are changed, by adding thereto that such decree shall further provide, in substance, as follows: The respondent may, at her election, reimburse the estate for the money paid out for her account by life insurance on her life placed in reputable level premium insurance companies authorized to do business in this state, to the extent of such portion of the proceeds of the property sold as would go to her if the value of her life estate were estimated and paid to her; the sum so used, however, to be considered an investment of property of the estate in which respondent has a life estate, secured by the life insurance, and not a payment to the life tenant out of it, of the value of such interest. The policies of insurance shall not be accepted, however, by the trustee, unless approved by the court upon the recommendation of the trustee, and the punctual payment by the plaintiff of the premiums that shall fall due upon the policies, and the future taxes upon the unsold and all the property of the estate, be secured by the life tenant by a mortgage to the trustee upon her life estate in such property, so laid that it will be a first lien on such estate. Upon the insurance being given and accepted, under the conditions named, the unsold real estate shall be released from the trust created by the decree and the life tenant restored to the control thereof as such tenant, subject to the obligations incident to that relation to the property. Upon the insurance premiums and the taxes on all the property of the estate for any year being paid by the life tenant, the trustee shall pay to her the income of the trust fund for such year, less the expenses of administering the trust, but if she shall fail to make any of such payments, the trustee

shall discharge the unpaid obligations out of any portion of the trust fund that would otherwise go to the life tenant, paying the residue, if any there be, to her; and if there be a deficiency, he shall enforce the mortgage security upon the life estate in accordance with the terms thereof, to recover the amount of such deficiency. No costs shall be allowed, on the rehearing, to either party, except clerk's fees, which shall be paid by the respondent.