## IN RE KINGSTON'S ESTATE.

*January 11—January 29, 1907.*

*Remainders: Sale under order of court: Procedure: Statutes: Construction.*

1. Under ch. 300, Laws of 1899, authorizing a sale of future contingent interests in land in all cases wherein the court may find a sale to be substantially promotive of the interests of the parties, it was not intended to confer upon courts powers additional to those theretofore exercised for the sale of interests in lands, but to prescribe a procedure to effect such sales; and hence interests in remainder belonging to the children of a devisee for life, or, should he die without issue, to testator's children or their issue, cannot be ordered sold in such a way as will result in a complete separation of such remainder from the life estate.

2. In such case, if some disposition of an interest in the estate must be made for the purpose of obtaining funds to discharge liens and claims created against it by the testator, and for its preservation, it is proper to raise the necessary sums by mortgage or by a sale of part or all of the estate, and to appropriate so much of the proceeds as may be required to free it from such liens or claims to that purpose, the remainder to be kept in lieu of the real estate and held for the use and benefit of the parties as intended by the testator in his devise of the real estate.

APPEAL from an order of the circuit court for Waukesha county: JAMES J. DICK, Circuit Judge. *Reversed.*

William Kingston died testate January 14, 1902. He left real estate consisting of two farms. In his will various bequests were made, and they, as well as the debts and a mortgage upon the lands, were made a charge against the real estate, which was disposed of as follows: One farm was devised to the testator's son Goodhand in fee. To another son, *Thomas,* a life estate in another farm was devised, with remainder to his son's issue living at the time of his death, and, in the event of his leaving no living issue, then remainder over to the children of the testator and to the child or children of any deceased child by right of representation. The will was duly admitted to probate and the sons Goodhand and *Thomas* were appointed executors. On November 28, 1903, the county court made an order, on petition of one of the legatees, requiring the executors to apply within sixty days to said court for a judicial construction of the will and for license to sell so much of or such parts or interest in the estate as would be proper for the purpose of satisfying the charges against the lands. The bequests made by the will, the debts of the testator, and a mortgage upon the lands were made a charge by the will upon the real estate of the testator; one half upon the farm devised to Goodhand and one half upon the farm in which *Thomas* was given a life estate. Before the executors had complied with the order of the county court *Thomas Kingston* applied to the circuit court under ch. 300, Laws of 1899, for an order for the sale of the interests of the remaindermen in the estate, alleging that he had been unable to raise money on his life estate to pay the charges against the land, and also alleging that the remaindermen would be benefited by a sale of their interests. The court entertained the application and appointed a referee for the purpose of effecting a sale, and also appointed a referee to inquire into and report to the court upon the matters alleged in the appli-

cation. The referee found that the amount chargeable against
the real estate in which *Thomas Kingston* was given a life
estate amounted to $2,648.39; that the personal property in
the hands of the executors was wholly inadequate to pay the
charges against the estate; that owing to the peculiar provis-
ions of the will it was impossible to raise funds upon this land
by mortgage or otherwise to pay the charges; that the remain-
dermen's interests were liable to be jeopardized by the inabil-
ity of the life tenant to protect them from waste and the de-
mands of legatees and creditors; that the estates in remainder
were unproductive, and that the interests of the owners would
be benefited by a sale thereof. The court approved the find-
ings of the referee and ordered a sale of the interests of the
remaindermen. This is an appeal from the order directing
such a sale.

For the appellants the cause was submitted on the brief of
*Connell & Weidner,* attorneys, and a separate brief by *T. E.
Ryan,* guardian *ad litem,* and for the respondent on that of
*Tullar & Lockney.*

SIEBECKER, J. The petitioner asks the court to authorize
a sale of all the estates in remainder in the real estate de-
scribed in the application, in which he is given a life estate
by the will of his deceased father. The petition alleges that
petitioner is unable to pay the charges against this property
under the provisions of his father's will; that because the title
is held by various parties he is unable, by loan upon his inter-
est, to obtain an amount to pay such charges; and that a sale
of the estates in remainder would promote the interests of
such owners by protecting them from threatened loss and pos-
sible destruction of their interests. Manifestly petitioner pro-
ceeds upon the theory that ch. 300, Laws of 1899, authorizes
a sale of such interests in all cases wherein the court may find
a sale to be substantially promotive of the interests of such
parties. An attempt to grant such power to the courts, to in-

voluntarily alienate the title to real estate, would seemingly be an improper interference with private vested rights and be of doubtful validity. If the legislature intended to confer such a power, the grant should appear in clear and explicit terms in the act. An examination of the context of the statute does not disclose such an intent of the legislature in clear and unmistakable terms. The purpose expressed in its provisions is in harmony with the idea of providing a method by which the title to property of persons under legal disability can be alienated in cases theretofore well recognized in the law, for the promotion of the interests of such owners, by preserving the subject and title of such estates when subjected to peril of loss and destruction, which can only be avoided by a sale and an application of the proceeds to the relief of the estate from such danger. The provisions of the act are mainly regulative of such proceedings, and are appropriate to effect an involuntary alienation of the title to real property in these well-recognized cases. The object to which the provisions are addressed is to furnish a method of turning land into money, and, as an incident thereto, to free the land from its burdens and preserve the proceeds *in solido,* keep them invested for the benefit of those who are or might become interested in the land, and to hold the proceeds and treat them with respect to the rights and interests of the parties as standing in lieu of the land. A consideration of these provisions and the general object of the statute, as gathered from the context, convinces us that it was not intended to confer on the courts additional powers to those now exercised for the sale of interests in lands, but that the statute should be restricted to prescribing a procedure to effect such sales. In this view of the statute, the primary inquiry arises as to whether petitioner has shown good ground upon which the court may direct a sale of the interests in remainder created by the will. Under the will petitioner owns a life estate in the property; upon his death, remainder over in fee to his living issue, and, in case he leaves

no living issue at his death, remainder over in fee to testator's other children in equal shares. The object of the application, as we have seen, is to dispose of the interests in remainder for the purpose of separating them from those of petitioner's life estate. Such disposition is asked upon the alleged ground that he, as life tenant, is unable to discharge the liens and charges against the property, and that such sale would promote the interests of such owners in remainder by protecting their estates from threatened loss and destruction by reason of his inability to free 'the property from such liens and charges. The question thus presented has been considered and determined by this court in the case of *Ruggles v. Tyson,* 104 Wis. 500, 79 N. W. 766, 81 N. W. 367, where the rights of parties and the power of the court to transfer the title to property under like circumstances was presented and exhaustively considered. It is there declared:

· "It is not doubted but that the powers of a court of equity are ample to prevent the destruction of the estate in remainder" under such circumstances. "Rather than that the scheme of the creator of such estate shall entirely fail by reason of some circumstance not foreseen by him and provided for, the court may intervene, but only for the purpose of preserving, and so far as necessary to preserve, the property. If it cannot be preserved in the form intended it may be preserved in its equivalent." Cases cited in *Ruggles v. Tyson,* 104 Wis. 507, 79 N. W. 768.

To accomplish this result the interests in remainder are to be preserved, as nearly as the circumstances will permit, as the creator of them has provided. It is also established that there can be no separation of the interests of the life tenant from those in remainder and that the estate must be maintained *in solido* as intended and provided by the grantor to the time of distribution, unless the court encounters some insurmountable obstacle which prevents effectuating such a purpose. Applying these principles to the facts here presented, it is manifest that petitioner's proceeding is erroneous in seek-

In re Kingston's Estate, 130 Wis. 560.

ing to effect a sale of the interests in remainder, for the obvious reason that this would result in a complete separation of these interests from the life estate and thus frustrate the very object of the testator.

It is also manifest that the facts and circumstances wholly fail to show any necessity for such a separation. It is apparent that if some disposition of an interest in the estate must be made for the purpose of obtaining funds to discharge the liens and claims against it for its preservation, it will in all probability be entirely feasible and practicable to obtain relief either by mortgaging the land to raise the required sum, or that a sale of a portion of the premises may be made and the proceeds applied to the payment of such liens and claims, and, in the event that the land cannot be sold in parcels, the whole may be sold and so much of the proceeds as may be required to free it from claims be appropriated to that purpose, and the remainder be kept in lieu of the real estate and held for the use and benefit of the parties as intended by the testator in his devise of the real estate. Under these circumstances the application to dispose of the estates in remainder and thus separate them from the life interest should have been denied and the proceeding have been dismissed.

This renders discussion of the other questions presented, as to the propriety of this proceeding in the circuit court during the administration of the estate by the county court, and as to the advisability of ordering a sale in case the proceedings were proper, immaterial and unnecessary, and we therefore refrain from considering them.

*By the Court.*—The order appealed from is reversed, and the proceeding is remanded to the circuit court with directions to dismiss the application.