## COQUILLARD ET AL. v. COQUILLARD.

[No. 9,040. Filed June 21, 1916.]

1. WILLS.—*Construction.*—*Contingent Remainders.*—Under a will devising a life estate in lands owned in fee to the testator's two sons as tenants in common, share and share alike, the remainder in fee going to the children of such children, and the residue of the testator's estate is devised one-third to the wife and two-thirds to the sons, the remainder in fee, prior to the birth of a child to a son, is not a vested but a contingent remainder which, on the birth of a child to a son, will at once vest in such child, subject to be opened up to let in children thereafter born to such son. p. 432.

2. WILLS.—*Construction.*—*Qualified or Determinable Fee.*—Where a testator devised a life estate in lands owned in fee to his two sons, as tenants in common, share and share alike, with the remainder over to such children as might be born to the sons, the estate of the testator in the fee was not exhausted by such devise, since as to a son there remains undisposed of an estate impliedly limited on his life estate and impliedly limited by the contingent remainder in fee created in the children of such son; and the undis-

Coquillard v. Coquillard—62 Ind. App. 426.

posed residue, upon the removal of the possibility of the birth of a child to such son, will ripen into a remainder in fee, free from limitations over, such residue of the estate being in the nature of a qualified or determinable fee.   p. 433.

3.   ESTATES.—*Determinable Fee.—Inheritance.*—A qualified or determinable fee is an estate of inheritance, descendible to heirs and may be devised or assigned.   p. 434.

4.   WILLS.—*Construction.—Residuary Clause.*—To avoid partial intestacy, a residuary clause in a will should be liberally construed and words used therein given the widest possible scope so that all property, not otherwise disposed of and not specifically excepted from the operation of such a clause, passes by virtue of its provisions.   p. 434.

5.   WILLS.—*Qualified Fee.—Residuary Clause.*—Where a testator devised a life estate in land owned in fee to two sons, A and B, in common, share and share alike, with the remainder over to their children, the qualified fee in the undivided one-half of such lands, not being devised by any item of the will, would pass into the residue of the estate, which was disposed of by a general residuary clause, one-third to the widow and two-thirds to the sons as tenants in common in equal parts, and A owns a remainder in fee in the undivided one-third of the other half of the real estate which was bequeathed to B, subject to B's life estate therein and to be divested by the birth of a child to B, and B owns the same interest in the qualified fee of A.   p. 434.

6.   PARTITION.—*Right of Action.—Title and Possession.*—Plaintiff, a tenant in common with his brother under the terms of his father's will, owing a life estate in an undivided one-half of the lands involved and, as such, being entitled to the possession of such lands in common with his brother, may maintain an action considered strictly as a proceeding for partition, in so far as the elements of title and possession are essential to such form of action and may therein also bind his cotenant and all remaindermen that are parties thereto.   p. 435.

7.   PARTITION.—*Divesting of Title.—Hearing.*—One may be divested of his estate by operation of law, and without his consent, as by a decree of court entered in a proper proceeding, but it is generally necessary, however, that such a decree be entered in a proceeding in which he has an opportunity to be heard by being properly made a party thereto, and, if not so made a party, it is the general rule that the decree is not binding on him.   p. 436.

8.   PARTITION.—*Nature of Action.*—The remedy by partition had its origin at common law, but in this state it is regulated by statute. p. 436.

9.   PARTITION.—*Jurisdiction.—Legal and Equitable Remedies.*— Under §1244 Burns 1914, §1187 R. S. 1881, conferring authority to act in partition proceedings on circuit courts and courts having probate jurisdiction and under §249 Burns 1914, §249 R. S. 1881,

giving to such tribunals the right to determine in the same suit actions at law and suits in equity, such courts have the power, to the full extent of their jurisdiction, to administer both legal and equitable remedies in a proceeding for partition.    p. 437.

10. PARTITION.—*Effect of Suit.—Title.*—In an action for partition resulting in a division rather than in a sale of the lands, the title of the owners is neither enlarged nor diminished, as their respective shares are merely ascertained and set off to them in severalty; and, where the proceeding results in a sale of the lands as indivisible, the various estates and interests therein are merely transferred to the fund arising from such sale, as provided by §1261 Burns 1914, §1204 R. S. 1881.    p. 438.

11. PARTITION.—*Sale of Lands.—Interest of Contingent Owners Not in Being.*—Where a testator devised a life estate in an undivided one-half of certain lands to each of two sons, with the remainder in fee to the children, if any be born, of such sons, and by another item of the will a qualified fee in such lands was created in the widow and two sons as tenants in common, such qualified fee being subject to be divested by the contingent estate, it was not erroneous for the trial court to make a decree, in an action for partition wherein the widow and the two sons were properly made parties, no children having been born to such sons, that the lands should be sold free of all life estates and remainders and that a title in fee simple pass to the purchasers free from all claims of the parties to the proceedings, their heirs and descendants.    pp. 443, 444.

12. PARTITION.—*Sale.—Distribution of Proceeds.—Order.*—In an action for partition where the evidence disclosed that a testator had devised a life estate in an undivided one-half of certain lands to each of two sons as tenants in common, with the remainder in fee to the children, if any be born, of such sons, and another item of the will created in the widow and two sons a qualified fee, subject to be defeated by the contingent estate, and at the time of the action no children had been born to the sons, the funds arising from the sale of the lands, as decreed by the court, should be distributed as follows: First, the payment of the costs and expenses of the action; second, the residue of the fund should be loaned or invested with proper security, the net income to be equally divided between the two sons until the death of one of them, whereupon, if there has been no child born to such deceased son, one-half of such fund should be distributed to his heirs, to his brother and to the testator's widow or her heirs, but if children have been born alive to such son, on his decease, the one-half of such fund should be distributed to such children, if living, or to the heirs of those deceased and a like course should be pursued as to the other half of the fund.    p. 446.

From St. Joseph Circuit Court; *Walter A. Funk,* Judge.

Action by Alexis Coquillard against Joseph A. Coquillard and another. From a judgment for plaintiff, the defendants appeal. *Reversed.*

*Rich & Rich,* for appellants.
*Hubbard & Hubbard,* for appellee.

CALDWELL, C. J.—Appellee brought this action against appellants to procure the partition and sale as indivisible, of certain lands situate in St. Joseph County, of which Alexis Coquillard, Sr., died seized in fee, and of the estimated value of $113,575, which lands are the same as those described in the third item of his will hereinafter set out. *Coquillard* v. *Coquillard* (No. 9033), 62 Ind. App. 489, 113 N. E. 481, is in many respects a similar case.

The questions properly presented arise under exceptions reserved by appellants to conclusions of law stated on a special finding of facts. The finding, to the extent material here, is to the following effect: Alexis Coquillard, Sr., died testate in said county, February 26, 1890, seized in fee of said lands as aforesaid, and leaving surviving him as his only heirs at law his widow, the appellant Maude M. Coquillard, born October 23, 1854, and his sons, appellant Joseph A. Coquillard, born December 18, 1884, and appellee, born January 21, 1882. His will was duly probated March 3, 1890. His estate has been settled and the executor of the will discharged, and all trusts created by the will have been fully executed. Both sons are unmarried, and no child has been born to either of them. The third and seventeenth items of the will are as follows:

"Third. I give and devise to my said sons, and other children if I should have any" (the land involved, describing it) "to have and to hold the same unto my children, and such other

children as may be born unto me, in common share and share alike, during their respective lives, and the remainder from and after the death of my said children I give and devise to such children as may be born unto my said children, such descendants of my said children to take the share of their parents per stirpes and by way of purchase. Provided, however, that whereas my said children are now infants, my said wife, Maude M. Coquillard, shall have, hold, manage and control all the land described in this paragraph of this will during the minority of the youngest of my surviving children, and during such period of time she shall be entitled to collect all rents arising from said property, she shall keep the buildings on said premises insured for two thirds value, and rebuild in case of loss by fire so far as the insurance will go, my trustees to pay balance of cost of rebuilding, and pay all taxes and assessments on said lands and keep said property in good repair."

"17th. I give and bequeath all the residue of my estate, both real and personal, to my wife and children, my wife to have one third and my children two thirds thereof.."

The court finds that the devised real estate is suburban, with a residence thereon; that it is subject to heavy assessments for taxes and urban improvements; that it yields but little income and is a source of expense greatly exceeding the income therefrom; that its main value consists in its fitness for subdivision and sale as urban real estate; that it is not susceptible of division among the parties and cannot be partitioned among the respective owners, and that it should be sold and the proceeds distributed. The conclusions of law are as follows: "1. That the plaintiff, Alexis Coquillard, has an estate for life in the undivided half of said real estate; that until a child is born to him in lawful

wedlock he owns in remainder the fee simple of an undivided one third thereof; that upon the birth of such child a remainder in fee in the said undivided half shall vest in such child, subject to the father's life estate, and subject to be divested and shared in fee, share and share alike with any other child or children of said Alexis Coquillard, thereafter born to him as aforesaid. 2. That the defendant, Joseph A. Coquillard, has an estate for life in the undivided half of said real estate; that until a child is born to him in lawful wedlock he owns in remainder the fee simple of an undivided third thereof; that upon the birth of such child a remainder in fee in the said undivided half shall vest in such child, subject to the father's life estate and subject to be divested and shared in fee share and share alike with any other child or children of said Joseph A. thereafter born to him as aforesaid. 3. That the defendant, Maude M. Coquillard, has a fee simple in the undivided one-third of said real estate, subject to the life estate of Alexis Coquillard and Joseph A. Coquillard and subject to be divested on the birth of a child to either of said sons, so as to permit such child to take its father's one-half share in fee simple as above provided. 4. That said lands should be sold free of all life estates and remainders and a title in fee simple pass to the purchaser free from all claims of the parties herein, their heirs and descendants. 5. That on the sale of any of said lands the proceeds, after payment of costs, fees and expenses, as adjudged hereafter by the court, shall be distributed as follows: To each son the value of his life estate as herein found to be computed according to the mortality tables, and the residue to be divided into three equal parts. Each of said sons shall execute his bond payable to

the State of Indiana and conditioned that the obligor shall pay over to the duly appointed guardian of any child born to the obligor the share of such child under the third clause of the testator's will, as herein found."

To determine the correctness of the conclusions of law necessitates that we place a construction on the third and seventeenth items of the will. In doing so, there are certain provisions of the third item that may be eliminated: Thus, the language by which the testator expressed his intention that children born to him subsequent to the execution of the will should participate on equal terms with the children then in being, in the estate created in the latter by such item. Such language may be eliminated for the reason that additional children were not born to him, and the possibility thereof was removed by his decease. The proviso clause of such item may also be eliminated for the reason that the estate thereby created in and the duties thereby imposed on the widow have terminated by the testator's youngest son reaching and passing his majority. Proceeding to consider the remaining provisions of the third item, first in its relation to appellant, Joseph A. Coquillard, it is apparent that the testator thereby devised to such son an estate in the undivided one-half of the lands described, for and during the period of his natural life as tenant in common with his brother. He next devised to the children of such son, as tenants in common, a remainder in fee in such undivided one-half of such lands. As no children have been born to such son, the beneficiaries of such remainder are not ascertained, because not in being. The remainder in fee, therefore, is contingent rather than vested. On the birth of a child to such son, such remainder will at once vest

in such child, subject to open up to let in children thereafter born to such son, on equal terms with those theretofore born.    Fearne, Cont. Rem. 9; 24 Am. and Eng. Ency. Law 397; *Amos* v. *Amos* (1889), 117 Ind. 19, 19 N. E. 539; *Aldred* v. *Sylvester* (1915), 184 Ind. 542, 111 N. E. 914; *Doe* v. *Considine* (1867), 6 Wall. (U. S.) 458, 18 L. Ed. 869; *Alsman* v. *Walters* (1914), 184 Ind. 565, 106 N. E. 879, 111 N. E. 921; *McIlhinny* v. *McIlhinny* (1894), 137 Ind. 411, 37 N. E. 147, 24 L. R. A. 489, 45 Am. St. 186.

The estates created in appellee and his children by such item are identical with those created in appellant Joseph A. Coquillard and his children, but involve the remaining undivided one-half of the lands.

It is evident that the estate in fee simple of which testator died seized is not exhausted by the estates carved therefrom by the third item 2.   of the will.    Limiting our discussion, for purposes of clearness, to the estates created in Joseph A. Coquillard and his children in the undivided one-half of such lands, it is evident that there remains undisposed of by such third item an estate impliedly limited on the life estate created in Joseph A. Coquillard, and impliedly limited by the contingent remainder in fee created in his child or children. The event by which such residue of the estate is limited is of a nature that it may never occur. A child or children may or may not be born alive to Joseph A. Coquillard.   If a child or children be born alive to him, such residue of estate will thereupon determine, and such contingent remainder in fee will become vested as aforesaid. The course of time will disclose that a child has been, or that a child can not be born to

him. When the possibility of the birth of a child to him has been removed, if such should be the case, such residue of estate will ripen into a remainder in fee free from limitations over. Such residue of estate is therefore in the nature of a qualified or determinable fee. Tiedeman, Real Prop. §§36, 211; 16 Cyc 602; 10 R. C. L. 652; *First Universalist Society* v. *Boland* (1892), 15 L. R. A. 231, note. As such estate may continue forever, it is an estate in fee. It is an estate of inheritance, descendible to heirs and may be devised or assigned. *Aldred* v. *Sylvester, supra; Mendenhall* v. *First New Church, etc.* (1911), 177 Ind. 336, 98 N. E. 57.

3. In order to avoid partial intestacy, a residuary clause in a will should be liberally construed. Words used therein are given the widest possible scope. If general in its terms, all property not otherwise disposed of and not specifically excepted from the operation of such a clause, passes by virtue of its provisions. Page, Wills §507; *Barker* v. *Town of Petersburg* (1907), 41 Ind. App. 447, 82 N. E. 996.

4. It follows that as such qualified fee in the undivided one-half of such lands is not devised by the third or any other item of the will, it passed into the residue of the estate, and by the seventeenth item, which is a general residuary clause, it is devised to the widow and the two sons as tenants in common in equal parts. A like line of reasoning leads to a like result respecting the other one-half of such estate in fee limited on the life estate of Alexis Coquillard, and limited by the contingent remainder in fee created in his child or children. The first conclusion of law deals only with the undivided one-half of the real estate. It therefore fails to cover Alexis Coquillard's entire

interest in such qualified fee. It should contain an additional statement that Alexis Coquillard, until a child is born to his brother Joseph Coquillard, owns also a remainder in fee in the undivided one-third of the other half of such real estate, subject to Joseph Coquillard's life estate therein, and subject also to be divested and defeated by the birth of a child to Joseph, as stated in the second conclusion. A like infirmity exists in the second conclusion, in its relation to Joseph Coquillard's interest in such qualified fee, and such conclusion should be likewise restated and modified. The third conclusion is correct.

We next direct our attention to the fourth conclusion of law. We are thus required to determine whether, under the surrounding circumstances, appellee is entitled to maintain this action, and whether the court was authorized to entertain it and decree the partition and sale of the lands involved. Appellee, as a tenant in common with his brother, is the owner of an undivided one-half of the lands for the period of his natural life, and as such, the right to the possession of such lands rests in him in common with his brother. It is, therefore, evident that he has title to an estate therein as a tenant in common with a present right to possession, and that he may maintain this action considered strictly as a proceeding for partition, in so far as the elements of title and possession are essential to such form of action. In such action, he may also bind his cotenant and all remaindermen who are parties thereto. 'Hawkins v. McDougal (1890), 125 Ind. 597, 25 N. E. 807; Shaw v. Beers (1882), 84 Ind. 528; Tower v. Tower (1895), 141 Ind. 223, 40 N. E. 747.

Of the estates into which the estate in fee simple of which testator died seized is carved by the third

and seventeenth items of the will, all the owners of the life estates and all the owners of such qualified fee are made parties.   The contingent owners of the contingent remainders in fee are not parties to the proceeding.   As they are not in being they cannot be made parties. It is possible only that they will ever be in being. Under such circumstances, will the decree entered in this proceeding bind them when in being, and if in being, or may it be so formulated that it will be binding on them?

One may be divested of his estate by operation of law, and without his consent, as for illustration, by the decree of a court entered in a proper 7.   proceeding where the court has jurisdiction over his person and the subject matter of the action.   To that end, however, it is essential, at least as a general rule, that such decree be entered in a proceeding in which he has an opportunity to be heard by being properly made a party thereto. If not so made a party, it is a general rule, to which the courts as matter of practical necessity recognize exceptions, that a decree is not binding on him. We proceed to determine whether the situation here invokes an exception.

The remedy by partition had its origin at common law.   Subsequently, it was extended by English statutes. Eventually equity assumed 8.   a concurrent jurisdiction, which in England at a later date became exclusive.   In the various jurisdictions of this country, the proceeding is regulated by statute. 21 Am. and Eng. Ency. Law 1142, *et seq.*   The remedy by statute is in many jurisdictions regarded as cumulative.   Freeman, Coten. and Part. (2d ed.) §§428, 429, 449; 30 Cyc 170, 171 and cases.

In this State partition is regulated by statute. Jurisdiction is conferred on circuit courts or courts

having probate jurisdiction.     §1244 Burns 1914,
§1187 R. S. 1881. . In this State jurisdiction
9.  in what were formerly actions at law and also
suits in equity is committed to the same
tribunals, and such tribunals to the full extent of
their respective jurisdictions, may administer both
legal and equitable remedies in the same suit.
§249 Burns 1914, §249 R. S. 1881. In a partition
proceeding, the rights of the parties, whether legal
or equitable, are equally within the cognizance and
protecting power of the courts. *Milligan* v. *Poole*
(1871), 35 Ind. 64; *Martindale* v. *Alexander* (1866),
26 Ind. 104, 89 Am. Dec. 458; *Schee* v. *McQuilken*
(1877), 59 Ind. 269.

In the case at bar, unless a court exercising
equitable powers may otherwise decree, the real
estate involved cannot be sold and conveyed by
perfect title until the expiration of the life estates
created by the third item of the will. This is ap-
parent from the nature and quantity of the various
estates created by the will. As measured by the
Carlisle tables of mortality, the life expectancy of
testator's sons at his decease were approximately
50 and 51 years respectively. At the commence-
ment of this action in 1914, such expectancies were
approximately 33 and 34 years respectively. At
the former time the real estate involved was situ-
ated a distance from South Bend, then a city of
21,000 inhabitants; at the latter time, a part of such
real estate was within the city limits and the
balance contiguous thereto, and the city had in-
creased in population to about 65,000 inhabitants.
The proximity of the real estate to the city natural-
ly increases its value, if such value may be rendered
available, but does not necessarily augment its
capacity to produce revenue. From an increase
in value there inevitably results an increase in taxa-

tion expenses. Proximity to and absorption into
the territorial limits of the city subject the real
estate to assessments for public improvements in
the ordinary course of events. The court finds that
the period has arrived when the expenses of main-
taining the real estate greatly exceed the income
derived therefrom, and also that the value of such
real estate consists mainly in the fact of its fitness
for subdivision and sale as urban real estate. The
tendency of taxation and special assessment charges
is upward rather than downward. If the present
status of this real estate must be maintained, until
the termination of the life estates created therein,
it is at least possible that no owner of a limited
estate therein will feel justified in discharging such
land from taxation and special assessment charges
as they arise. Moreover, it is apparent from the
finding that such real estate in the present condi-
tion of its title, stands as a partial barrier to the
proper growth and development of the city of
South Bend, and consequently to the development
of the State. These considerations are sufficiently
potent to arouse the powers of the court to the point
of diligent inquiry whether there may not be a way
within the equitable jurisdiction of the court by
which the lands may be sold and the interest of all
persons, including contingent owners not in being,
safeguarded by the proper administration of the
fund derived.

We are thus brought face to face with the ques-
tion, whether the court under the circumstances
was authorized to direct the sale of the real
10. estate as against testator's sons' children
not in being. In approaching this question,
it should be remembered that in an action for
partition, conceding that this proceeding must be
regarded only as such, resulting in a division rather

than in a sale of the lands, the owners are not divested of any title or given any new title. Their respective shares are merely ascertained and set off to them in severalty. *Avery* v. *Akins* (1881), 74 Ind. 283. If such a proceeding results in a sale of the land as indivisible, the various estates and interests therein are merely transferred to the fund. §1261 Burns 1914, §1204 R. S. 1881. In cases where titles are complicated by limitations and contingencies, both private and public interests may, under some circumstances, require the sale of the involved real estate, even as against persons not in being. In such a situation, courts are sometimes impelled to act by expediency and practical necessity, binding the interests of persons not in being by recourse to the principle of representation. The Court of Appeals of South Carolina, in holding that a tribunal of competent jurisdiction may by its decree bind the contingent titles of remaindermen not in being, where all interested persons who could be made parties are brought before the court, uses this language: "To say that the Court could not under circumstances like these convey away the fee, would be to assert a doctrine that would render conditional limitations and contingent remainders an intolerable evil to a growing and prosperous community. Thus to shackle estates without the power of relief, unless every person having a contingent and possible interest could be brought before the Court, as a party complainant or defendant, according to the usual forms and ordinary practice of the Court, would be to sacrifice rights and interests of the present generation to those of posterity, * * * . If the whole property of the country were thus situated, it is obvious that all improvement and advance would be completely checked. And this check upon progress and im-

provement would be in direct proportion to the extent to which this state of things exists. The case before the Court is an apt illustration. Here are valuable unimproved lots, in a thriving and prosperous town, which the life-tenant cannot with a due regard to his interest improve, and the remaindermen cannot, because their rights are contingent and may never vest." *Bofil* v. *Fisher* (1850), 3 Rich. Eq. (S. C.) 1, 55 Am. Dec. 627.

The following language is used at page 51 of a valuable editorial note to *Downey* v. *Seib* (1906), 8 L. R. A. (N.S.) 49: "The complication of human affairs has become such that it is impossible for courts to act strictly on the general rule not to bind the interest or declare the right of any man in his absence. Cases arise in which, if you hold it necessary to bring before the court every person having an interest in the question, the suit could never be brought to a conclusion. The consequence would be that, if the court adhered to the strict rule, there would in many cases be a denial of justice. This has induced the courts to sanction a relaxation of the rule. And accordingly they have said: If we can be satisfied that we have before the court persons whose interests are the same as the interests of those who are absent, we will be content to hear the cause upon the argument of such persons; and, if we are then satisfied that the case has been fairly and honestly presented, we will order the distribution of the fund on the representation of the persons present. *Powell* v. *Wright* (7 Beav. 444)."

In a case involving the contingent title of persons not in being, the Court of Appeals of New York said: "Where an estate is vested in persons living subject only to the contingency that persons may be born who will have an interest therein, the living

owners of the estate, for all purposes of any litiga-
tion in reference thereto and affecting the jurisdic-
tion of the courts to deal with the same, represent
the whole estate, and stand not only for themselves,
but also for the persons unborn. This is a rule of
convenience, and almost of necessity. The rights
of persons unborn are sufficiently cared for, if,
when the estate shall be sold under a regular and
valid judgment, its proceeds take its place and are
secured in some 'way for such persons." *Kent* v.
*Church of St. Michael* (1892), 136 N. Y. 10, 32 N. E.
704, 18 L. R. A. 631, 32 Am. St. 693.

In a like case, the Court of Errors and Appeals of
New Jersey says: "The established rule of equity
practice is that estates limited over to persons not
*in esse* are represented by the living owner of the
first estate of inheritance." *Dunham* v. *Doremus*
(1897), 55 N. J. Eq. 511, 37 Atl. 62. In discussing
the doctrine of representation and its application,
Judge Story says: "And as it is sufficient to bring
the first tenant in tail before the court, if in being,
whether he be plaintiff or defendant in the suit;
so, if there be no such tenant in tail in being, the
first person in being, entitled to the inheritance,
should be made a party; and if there be no such
person in being, then the tenant for life; and in such
a case, the decree made will bind the other persons
not in being. Thus, if there be a tenant for life
of an undivided share of an estate, with remainder
to his unborn sons in tail, the tenant for life may
maintain a bill for partition, and the decree will
be binding upon the sons, when they come *in
esse*. So, if there be a tenant for life, remainder to
his first son in tail, remainder over; and the tenant
for life is brought before the court before he has
issue, it is settled in equity, that the contingent
remaindermen are barred, and (as has been said)

from necessity. So, where there are contingent limitations and executory devises to persons not in being, they may in like manner be barred by a decree against a person claiming a vested estate of inheritance." Story, Eq. Pleading §145. The same author says that while there are exceptions to the rule "the cases within the exception must, however, stand upon peculiar equities and interests not affected by the same circumstances, which attach to the prior parties." Id. §146.

On the subject of exceptions, Mr. Freeman says: "An English case recognizes an exception to this principle of virtual representation, by denying its applicability in cases where the person seized in fee is liable to have his seizin defeated, by a conditional limitation or an executory devise, because, in that event, the estate is insufficiently represented by the person holding the first vested estate of inheritance. This exception is repudiated so far as it seems to be noticed in the United States." Freeman, Coten. and Part. (2d ed.) §482. In a leading New York case the court in applying the doctrine of representation says: "It is not a question of entirely divesting and destroying such contingent interests; but simply a question whether the property upon which they are attached may be changed in form; whether land may be converted into personal securities under the direction of the court, preserving such interests intact upon the property in its new form. * * * A decree against the person having the first estate of inheritance would bind those in remainder or reversion, although the estate might afterwards vest in possession. * * *

"It would therefore follow, as a matter of course, from this rule, that contingent limitations and executory devises to persons not in being would

in like manner be bound by a decree against the virtual representative of these remote and contingent interests, the person having the first vested estate of inheritance." *Mead* v. *Mitchell* (1858), 17 N. Y. 210, 72 Am. Dec. 455.

In the case at bar testator's sons as the owners of the life estates created by the third item of the will are parties. The widow also is a party.

11. As we have said the qualified fee that arises under the seventeenth item of the will is vested in the widow and sons as tenants in common. Such qualified fee, although liable to be defeated by the contingent estates created by the third item of the will, is, as we have said, an estate of inheritance. The contingent owners of such contingent estates are not in being. It follows that all possible parties are before the court. By way of illustration, if one of such contingent owners were in being and a party to the proceeding, his interests would not be broader than the question of the amount of the land that should be set off to his father as life tenant, on a division of the land, or the question of the amount of the selling price, if the land should be ordered sold. The interests of such contingent owners would be so measured, because the land so set off, or that part of the purchase price or its equivalent representing it would eventually come into his possession or the possession of his heirs, possibly, however, in common with brothers and sisters subsequently born. His interest would not be broader than as indicated. The father as life tenant has a like interest neither narrower nor broader. If the real estate should be divided, he would be interested in the amount of the same identified as his share. If the lands should be sold, he would be interested in the distributive amount representing his estate in the land. The larger the

selling price, the larger such amount. On the sale of the lands, the parties to the proceedings as tenants in common to such qualified fee will likewise be interested in the amount of the selling price. We fail to see that the interests of such contingent owners are not fully represented in this proceeding. We, therefore, hold that under the circumstances of this case, even though it be regarded solely as a proceeding for partition, the court did not err in the fourth conclusion of law. In addition to authorities above cited, see the following: Downey v. Seib, supra, note p. 67; Rutledge v. Fishburne (1903), 97 Am. St., note p. 766; 30 Cyc 205; Cheesman v. Thorne (1833), 1 Edw. Ch. (N. Y.) 629; Fox v. Fee (1897), 24 App. Div. 314, 49 N. Y. Supp. 292, 298; Carter v. White (1904), 134 N. C. 466, 46 S. E. 983, 101 Am. St. 853, 870, note p. 868; Gavin v. Curtin (1898), 171 Ill. 640, 49 N. E. 523, 40 L. R. A. 776; Ridley v. Halliday (1900), 106 Tenn. 607, 61 S. W. 1025, 53 L. R. A. 477, 82 Am. St. 902; Hale v. Hale (1893), 146 Ill. 227, 33 N. E. 858, 20 L. R. A. 247.

The fifth conclusion of law is to the effect that the proceeds derived from the sale of the lands should be distributed, first, to the payment of costs and expenses; second, to each son the value of his life estate estimated on his life expectancy under the mortality tables; third, that the residue be divided into three parts, and that each son execute his bond conditioned for the payment to the legal guardian of any child born to him, the share of such child under the third item of the will. It will be observed that the provision of such conclusion, which we have designated as the third conclusion, is indefinite. While it is specified that the residue should be divided into three parts, there is no provision as to the disposition of such parts. Pre-

sumably, the court intended to state that one of such parts should be paid to the widow and one to each son, as owners of such qualified fee, under the seventeenth item of the will. If so, there is no provision respecting the safeguarding of the one-third to be paid to the widow, unless the bonds to be executed by the sons are intended to be broad enough to that end.

The decree on the subject of distribution is less definite than the fifth conclusion. It merely directs in general terms that, after the payment of the costs and expenses, the balance be paid to the parties to the proceeding in proportion to their several interests in the real estate. There is no provision for the protection of the fund.

The possibilities of the situation here should be considered. Each son is plainly seized of a life estate in the undivided one-half of the lands. Under the seventeenth item of the will there is, in effect, devised to each son in addition, a one-third interest in the qualified fee in the undivided one-half of such lands, subject to his life estate therein, and a like interest in the qualified fee in the other half of such lands subject to his brother's life estate therein. The widow also, under such item, is devised a one-third interest in the qualified fee in each one-half, subject to the life estate therein. As we have said, should a child be born alive to either son, such event will terminate such qualified fee in the undivided one-half of the lands, and vest the contingent remainder in such child as aforesaid. Should a child be born alive to each son, a like result will follow as to each half of the real estate. In speaking of the birth of a child, or of a child born alive, in this opinion, we intend to include a child in *ventra sa mere*, afterwards born alive. *Knotts* v. *Stearns* (1875), 91 U. S. 638, 23 L.

Ed. 252; *Biggs* v. *McCarty* (1882), 86 Ind. 352, 44 Am. Rep. 320; *Carter* v. *White*, 101 Am. St., note p. 869. Should one son die, no child having been born to him, and leaving his brother surviving him, such event will of course terminate the life estate of the former, destroy the contingent remainder in the half of the lands, and ripen the qualified fee therein into a fee simple absolute, the one-third of which would thereupon descend to the heirs of such son, one-third thereof vest in the surviving brother, and one-third· in the widow, if living, or descend to her heirs, if deceased. On the decease of the other brother, no child having been born to him, a like result would follow as to the other half of the lands. Hence, the importance of safeguarding the fund. in some proper manner. This may be done by first paying the costs and expenses of the action, since such costs and expenses were incurred for the benefit of all persons interested, and under the special circumstances presented by this case, by the proper administration of a trust which necessarily arises out of the situation involving the residue. Such trust should be administered as follows: By the loaning or investing of the fund with proper security until the decease of a son. During such time the net income should be divided between the two sons. On the decease of a son, no child having been born to him, the one-half of such residue should be distributed to his heirs or legatees, to his brother, and to the widow or her heirs or legatees, as above indicated. If children have been born alive to such son, on his decease the one-half of such fund should be distributed to such children, if living, and to the heirs or legatees of those deceased. A like course should be pursued as to the other half of the fund. See *Ruggles* v. *Tyson* (1899), 104 Wis. 500,. 79 N. W. 766, 48 L. R. A. 808;

*Noble* v. *Cromwell* (1858), 26 Barb. (N. Y.) 475; *Gavin* v. *Curtin, supra; Coquillard* v. *Coquillard,* (1916), *supra; Mead* v. *Mitchell, supra; Cheesman* v. *Thorne, supra.*

The judgment is reversed, with instructions to restate the first, second and fifth conclusions of law in harmony with this opinion, and to decree accordingly.

NOTE.—Reported in 113 Ind. 474. See under (1) 40 Cyc 1676; (2), (3) 16 Cyc 602, 603; 40 Cyc 1589-1593; (4), (5) 40 Cyc 1564-1566; (6) 30 Cyc. 188, 191; (7) 30 Cyc 201, 202; (8), (9) 30 Cyc 170, 171; (10) 30 Cyc 308; (11) 30 Cyc 205, 272; (12) 30 Cyc 291; 119 Am. St. 586.