## COONEY v. WALTON et al.

A testator devised certain realty to his wife " to have and to hold, for and during the term of her natural life, and, at her death, to vest in and belong in fee simple to my issue then living, said issue taking per stirpes and not per capita; but if there be no such issue living at the death of my said wife, I devise the real estate above mentioned, together with all the remainder of my property," to named persons. Included in the realty was a city lot on which there were buildings that were in need of repair and could not be rented advantageously. While the life-tenant was yet in life and while the only issue of the testator was an adult son who was childless, the widow instituted an equitable suit against the son and the other contingent remaindermen specified in the will. The object of the suit was to have a decree for sale of the property, including every possible interest of contingent remaindermen in esse or any possible future issue of the testator's son, for reinvestment under the same limitations as provided in the will. *Held*, that the court had jurisdiction of the parties and subject-matter, and the decree was binding upon all parties to the suit and upon any unborn issue of the son of the testator who might be in life at the death of the life-tenant.

No. 1889. FEBRUARY 21, 1921.

Specific performance. Before Judge Hammond. Richmond superior court. February 3, 1920.

Maurice Walton died in Augusta, Ga., on March 6, 1913, leaving a will which was duly probated. The second item of the will was: " All the real estate situate in the present corporate limits of the City of Augusta, Georgia, with the store buildings, dwellings, and other improvements that may be thereon, of or to which at my death I may be seized and possessed or entitled, or have the power to dispose of by will, I give and devise to my wife, Julia Scales Walton, to have and to hold for and during the term of her natural life, and, at her death, to vest in and belong in fee simple to my issue then living, said issue taking per stirpes and not per capita; but if there be no such issue living at the death of my said wife, I devise the real estate above mentioned, together with all the remainder of my property, to Alexander R. Walton, John Moore, Noel M.

Moore, and Lula S. Jackson." Lula S. Jackson was the mother of Julia Scales Walton, and died on May 12, 1912, leaving as her only heirs at law her two children, Julia Scales Walton and Thomas M. Jackson, Thomas M. Jackson died intestate on June 1, 1913, leaving Julia Scales Walton as his sole heir at law. John Moore Walton was a son of the testator Maurice Walton, and his only issue in life at the time of the negotiations and proceedings hereinafter mentioned. Included in the real estate situated in the City of Augusta left by the testator was a city lot fronting about 53 feet on Broad Street and extending back in uniform width about 180 feet to property of other persons, there being located on the lot certain storehouses and other improvements. Julia Scales Walton entered into a contract to sell this lot above mentioned to William J. Cooney at the price of $32,000, provided that the vendor " could obtain the necessary authority to make a valid conveyance " of the property to the purchaser in fee simple. After making the contract Julia Scales Walton instituted a suit in the superior court, returnable to the September term, 1919, against John Moore Walton, son of the testator, and Alexander R. Walton, John Moore, and Noel M. Moore, thus embracing all existing contingent remaindermen under item two of the will. Service was acknowledged; and a consent was entered into by which the case should be decided at the first term, and that the judge should pass on all questions of law and fact without a jury. The purpose of the suit was to obtain authority to sell the property to William J. Cooney, in compliance with the contract, for the purpose of reinvestment in United States bonds, State bonds, or municipal bonds, as might be directed by the court. The grounds upon which it was sought to sell the realty were: " The property is in need of repair, and such repairs will materially curtail the immediate income derived by your petitioner, and the investment which is proposed of the proceeds of the sale will produce a larger income for your petitioner. The property is not likely to enhance in value unless it is remodeled and extensively repaired, and this your petitioner does not care to undertake; so that it will be to the interest of the remaindermen to have said property sold for the price named and the funds invested as proposed. . . The sale of the said property will be to the advantage not only of the life-tenant, Julia Scales Walton, but also of all of the remaindermen, provided that the proceeds of such sales be invested upon the

same terms and in the bonds above suggested. . .. The defendant John Moore Walton is the only issue of Maurice Walton now in life, and that he is the 'virtual representative' of any child or children that may be born to him and who would come in the description of 'issue of Maurice Walton,' and that his interest and that of any other issue of Maurice Walton should not be allowed to suffer and his and their property rights be impaired by either the real or alleged lack of power to effect said sales, especially as his interest is identical with that of any other issue of Maurice Walton that may come into being." At the hearing the judge rendered a decree authorizing the sale of the property in fee and reinvestment of the purchase-price, and relieved the purchaser from responsibility for the reinvestment. Afterward a deed was executed by the life-tenant and several remaindermen, as provided in the decree, and was tendered to the proposed purchaser. He declined to accept the deed and pay the price, solely on the ground that the decree was invalid because the court was without jurisdiction to order a conveyance of the realty in fee simple. The life-tenant and contingent remaindermen named in the decree then instituted an equitable suit against the purchaser, William J. Cooney, for specific performance of the contract. The petition alleged all that is stated above. The defendant filed a general demurrer to the petition, which was overruled, and he excepted.

*Cumming & Harper* and *Alexander & Lee*, for plaintiff in error.
*Barrett & Hull*, contra.

ATKINSON, J. There is no question as to the right of the life-tenant, Julia Scales Walton, to convey her interest in the land. The sole question is as to the jurisdiction of the court of equity to order a sale of the fee, before termination of the life-estate, that would be binding upon the contingent remaindermen, including persons now in life and possible unborn children of one of those now in life. No trust is involved, and the title under consideration that is sought to be divested is the plain legal title of contingent remaindermen. In *Wilson* v. *Sullivan*, 81 *Ga.* 238, 245 (7 S. E. 277), it was said: "The test of jurisdiction to entertain a bill for injunction is not whether good cause for granting the injunction is set forth in the bill, but whether the court or its organ, the judge, could grant it for any cause. If the tribunal applied to can grant the injunction for any cause, then any question about cause is not a

question of jurisdiction, but of the proper exercise of jurisdiction." For reasons stated the life-tenant desired to sell for reinvestment which would be beneficial to her. Other persons who could be affected by the sale were contingent remaindermen, included among whom were the son of the testator and any possible future issue of the son that might be in life at the death of the life-tenant. The son being a party to the suit, the decree would bind him. His issue in case of his death before the death of the life-tenant would be in the same class that he now occupies. The question is, will the decree bind such unborn children as members of the same class as the sons? In *Phinizy* v. *Wallace,* 136 *Ga.* 520, 529 (71 S. E. 896), it is recognized that in a proper case a decree of sale for reinvestment would be binding upon contingent remaindermen who were parties to the decree ordering the sale. While it was not decided in that case that such a decree would be binding upon unborn persons, it was said on that subject: "In regard to the ability to render a valid decree of sale binding upon parties who may not now be in existence, there is some difficulty of determination. But the general trend of modern authority is not favorable to tying up property and preventing sales, especially where necessary for the protection and preservation of the corpus, if they can be legitimately made." Citing cases. The case of *Mayer* v. *Hover,* 81 *Ga.* 308 (7 S. E. 562), was one in which the parents of a child as next friend instituted an action of ejectment, claiming title under the will of John Hover. The defendant set up title under a decree in equity, rendered before the child was born, directing the sale of the property. There was a question raised as to whether the equitable proceedings were brought to a regular term of the court, and therefore whether there was jurisdiction. Jurisdiction was held to exist over the subject-matter; and after so holding this, it was said, "The court in this case having jurisdiction of the persons and of the subject-matter contained in the bill, the decree rendered by it in 1864 was not void, and the plaintiff is bound by the decree, although he was not born until after the decree."

In a recent case, Coquillard *v.* Coquillard, 62 Ind. App. 426 (113 N. E. 474), it was held: "Where a testator devised a life-estate in an undivided one-half of certain lands to each of two sons, with the remainder in fee to the children, if any be born, of

such sons, and by another item of the will a qualified fee in such lands was created in the widow and two sons as tenants in common, such qualified fee being subject to be divested by the contingent estate, it was not erroneous for the trial court to make a decree, in an action for partition wherein the widow and the two sons were properly made parties, no children having been born to such sons, that the lands should be sold free of all life-estates and remainders, and that a title in fee simple pass to the purchasers free from all claims of the parties to the proceedings, their heirs and descendants." In the opinion it was said: "In the case at bar, unless a court exercising equitable powers may otherwise decree, the real estate involved cannot be sold and conveyed by perfect title until the expiration of the life-estates created by the third item of the will. This is apparent from the nature and quantity of the various estates created by the will. As measured by the Carlisle tables of mortality, the life expectancy of testator's sons at his decease were approximately 50 and 51 years, respectively. At the commencement of this action in 1914, such expectancies were approximately 33 and 34 years, respectively. At the former time the real estate involved was situated a distance from South Bend, then a city of 21,000 inhabitants; at the latter time a part of such real estate was within the city limits and the balance contiguous thereto, and the city had increased in population to about 65,000 inhabitants. The proximity of the real estate to the city naturally increases its value, if such value may be rendered available, but does not necessarily augment its capacity to produce revenue. From an increase in value there inevitably results an increase in taxation expenses. Proximity to and absorption into the territorial limits of the city subject the real estate to assessments for public improvements in the ordinary course of events. The court finds that the period has arrived when the expenses of maintaining the real estate greatly exceed the income derived therefrom, and also that the value of such real estate consists mainly in the fact of its fitness for subdivision and sale as urban real estate. The tendency of taxation and special assessment charges is upward rather than downward. If the present status of this real estate must be maintained until the termination of the life-estates created therein, it is at least possible that no owner of a limited estate therein will feel justified in discharging such land from taxation and special assessment

charges as they arise. Moreover, it is apparent from the finding that such real estate, in the present condition of its title, stands as a partial barrier to the proper growth and development of the city of South Bend, and consequently to the development of the State. These considerations are sufficiently potent to arouse the powers of the court to the point of diligent inquiry whether there may not be a way within the equitable jurisdiction of the court by which the lands may be sold and the interest of all persons, including contingent owners not in being, safeguarded by the proper administration of the fund derived.

" We are thus brought face to face with the question whether the court, under the circumstances, was authorized to direct the sale of the real estate as against testator's sons' children not in being. In approaching this question, it should be remembered that in an action for partition, conceding that this proceeding must be regarded only as such, resulting in a division rather than in a sale of the lands, the owners are not divested of any title or given any new title. Their respective shares are merely ascertained and set off to them in severalty. Avery *v.* Akins (1881), 74 Ind. 283. If such a proceeding results in a sale of the land as indivisible, the various estates and interests therein are merely transferred to the fund. § 1261 Burns 1914; § 1204 R. S. 1881. In cases where titles are complicated by limitations and contingencies, both private and public interests may, under some circumstances, require the sale of the involved real estate, even as against persons not in being. In such a situation, courts are sometimes impelled to act by expediency and practical necessity, binding the interests of person not in being by recourse to the principle of representation. The Court of Appeals of South Carolina, in holding that a tribunal of competent jurisdiction may by its decree bind the contingent titles of remaindermen not in being, where all interested persons who could be made parties are brought before the court, uses this language: ' To say that the court could not, under circumstances like these, convey away the fee, would be to assert a doctrine that would render conditional limitations and contingent remainders an intolerable evil to a growing and prosperous community. Thus to shackle estates without the power of relief, unless every person having a contingent and possible interest could be brought before the court as a party complainant or defendant, according to the

usual forms and ordinary practice of the court, would be to sacrifice rights and interests of the present generation to those of posterity. . . If the whole property of the country were thus situated, it is obvious that all improvement and advance would be completely checked; and this check upon progress and improvement would be in direct proportion to the extent to which this state of things exists. The case before the court is an apt illustration. Here are valuable unimproved lots, in a thriving and prosperous town, which the life-tenant cannot with a due regard to his interest improve, and the remaindermen cannot, because their rights are contingent and may never vest.' Bofil v. Fisher (1850), 3 Rich. Eq. (S. C.) 1, 55 Am. Dec. 627.

" The following language is used at page 51 of a valuable editorial note to Downey v. Seib (1906), 8 L. R. A. (N. S.) 49: ' The complication of human affairs has become such that it is impossible for courts to act strictly on the general rule not to bind the interest or declare the right of any man in his absence. Cases arise in which, if you hold it necessary to bring before the court every person having an interest in the question, the suit could never be brought to a conclusion. The consequence would be that, if the court adhered to the strict rule, there would in many cases be a denial of justice. This has induced the courts to sanction a relaxation of the rule. And accordingly they have said: If we can be satisfied that we have before the court persons whose interests are the same as the interests of those who are absent, we will be content to hear the cause upon the argument of such persons; and, if we are then satisfied that the case has been fairly and honestly presented, we will order the distribution of the fund on the representation of the persons present. Powell v. Wright (7 Beav. 444).'

" In a case involving the contingent title of persons not in being, the Court of Appeals of New York said: ' Where an estate is vested in persons living, subject only to the contingency that persons may be born who will have an interest therein, the living owners of the estate, for all purposes of any litigation in reference thereto and affecting the jurisdiction of the courts to deal with the same, represent the whole estate, and stand not only for themselves, but also for the persons unborn. This is a rule of convenience, and almost of necessity. The rights of persons unborn are sufficiently cared for, if, when the estate shall be sold under

a regular and valid judgment, its proceeds take its place, and are secured in some way for such persons.' Kent *v.* Church of St. Michael (1892), 136 N. Y. 10, 32 N. E. 704, 18 L. R. A. 331, 32 Am. St. Rep. 693. In a like case, the Court of Errors and Appeals of New Jersey says: ' The established rule of equity practice is that estates limited over to persons not in esse are represented by 'the living owner of the first estate of inheritance.' Dunham *v.* Doremus (1897), 55 N. J. Eq. 511, 37 Atl. 62.

" In discussing the doctrine of representation and its application, Judge Story says: ' And as it is sufficient to bring the first tenant in tail before the court, if in being, whether he be plaintiff or defendant in the suit; so, if there be no such tenant in tail in being, the first person in being, entitled to the inheritance, should be made a party; and if there be no such person in being, then the tenant for life; and in such a case, the decree made will bind the other persons not in being. Thus, if there be a tenant for life of an undivided share of an estate, with remainder to his unborn sons in tail, the tenant for life may maintain a bill for partition, and the decree will be binding upon the sons, when they come in esse. So if there be a tenant for life, remainder to his first son in tail, remainder over; and the tenant for life is brought before the court before he has issue, it is settled in equity that the contingent remaindermen are barred, and (as has been said) from necessity. So, where there are contingent limitations and executory devises to persons not in being, they may in like manner be barred by a decree against a person claiming a vested estate of inheritance.' Story, Eq. Pleading, § 145. The same author says that, while there are exceptions to the rule, ' the cases within the exception must, however, stand upon peculiar equities and interests not affected by the same circumstances which attach to the prior parties.' Id. § 146.

" On the subject of exceptions, Mr. Freeman says: ' An English case recognizes an exception to this principle of virtual representation, by denying its applicability in cases where the person seized in fee is liable to have his seizin defeated by a conditional limitation or an executory devise, because, in that event, the estate is insufficiently represented by the person holding the first vested estate of inheritance. This exception is repudiated so far as it seems to be noticed in the United States.' Freeman, Coten. and

Part. (2 ed.) § 482. In a leading New York case the court, in applying the doctrine of representation, says: 'It is not a question of entirely divesting and destroying such contingent interests, but simply a question whether the property upon which they are attached may be changed in form; whether land may be converted into personal securities under the direction of the court, preserving such interests intact upon the property in its new form. . . A decree against the person having the first estate of inheritance would bind those in remainder or reversion, although the estate might afterwards vest in possession. . . It would therefore follow, as a matter of course, from this rule, that contingent limitations and executory devises to persons not in being would in like manner be bound by a decree against the virtual representative of these remote and contingent interests, the person having the first vested estate of inheritance.' Mead v. Mitchell (1858), 17 N. Y. 210, 72 Am. Dec. 455.

"In the case at bar testator's sons, as the owners of the life-estates created by the third item of the will, are parties. The widow also is a party. As we have said, the qualified fee that arises under the seventeenth item of the will is vested in the widow and sons as tenants in common. Such qualified fee, although liable to be defeated by the contingent estates created by the third item of the will, is, as we have said, an estate of inheritance. The contingent owners of such contingent estates are not in being. It follows that all possible parties are before the court. By way of illustration, if one of such contingent owners were in being and a party to the proceeding, his interests would not be broader than the question of the amount of the land that should be set off to his father as life-tenant, on a division of the land, or the question of the amount of the selling price, if the land should be ordered sold. The interests of such contingent owners would be so measured, because the land so set off, or that part of the purchase-price or its equivalent representing it, would eventually come into his possession or the possession of his heirs, possibly, however, in common with brothers and sisters subsequently born. His interest would not be broader than as indicated. The father as life-tenant has a like interest neither narrower nor broader. If the real estate should be divided, he would be interested in the amount of the same identified as his share. If the lands should be sold, he would be interested in the distributive amount representing his estate in

the land. The larger the selling price, the larger such amount. On the sale of the lands, the parties to the proceeding as tenants in common to such qualified fee will likewise be interested in the amount of the selling price. We fail to see that the interests of such contingent owners are not fully represented in this proceeding."

A companion case to the foregoing is Coquillard *v.* Coquillard, 62 Ind. App. 489 (113 N. E. 481). In this case it was held: "The trial court, in the exercise of its chancery powers, is clothed with jurisdiction to direct the sale and conversion of lands in fee held by a life-tenant, with conditional estates over to unascertained persons, where emergencies arise rendering action by the court imperative in order that the persons interested may be protected in their legal rights, and the body of the estate preserved for them; but such extraordinary powers should be used with caution. . . And where the exigencies of the situation require such action, . . the trial court may by proper decree order that the lands be sold free of all life-estates and remainders, and that title in fee simple shall pass to the purchaser; and such a decree is binding on the unborn grandchildren of a testator who devised to them, subject to intervening life-estates, the fee in the lands involved." In the opinion it was said: "It cannot be doubted that the power is lodged in chancery in a proper case, where all persons interested and likely to be affected by the decree are before the court, to convert realty into personalty, and to direct and supervise reinvestment. Thus, Ridley *v.* Halliday (1900), 106 Tenn. 607, 61 S. W. 1025, 53 L. R. A. 477, 82 Am. St. Rep. 902, involved lands held under a grant for the use of a life-tenant, with remainder over to successive classes, some of whom were not in being. It was made to appear that the interests of all concerned plainly required the sale of the lands and the reinvestment of the proceeds. In approving a decree to that end, the Court of Chancery Appeals of Tennessee held, that, under the circumstances presented, a court of chancery has inherent power to order a sale, the interested persons in esse being before the court, and that a decree so entered is binding on contingent owners not in being. The facts there were very similar to those here, differing principally in that the lands there had been conveyed and were held in trust for the life-tenant and remaindermen.

"In Curtiss v. Brown (1862), 29 Ill. 201, 230, likewise the lands involved were held in trust for the use of a life-tenant, with contingent interests over to unascertained persons; and in a situation similar in effect to those presented here, the court, in holding that chancery is clothed with power to grant relief by a sale, uses this language: 'Can it be said that the beneficiary of an estate which would bring in the market $100,000 should perish in the street from want, or be sent to the poorhouse for support, or that the estate should be totally lost, because there is no power in the courts to relieve against the provisions of the instrument creating this trust? Exigencies often arise not contemplated by the party creating the trust, and which, had they been anticipated, would undoubtedly have been provided for, where the aid of the court of chancery must be invoked to grant relief imperatively required; and in such cases the court must, as far as may be, occupy the place of the party creating the trust, and do with the fund what he would have dictated had he anticipated the emergency.' A like conclusion was reached in Hale v. Hale (1893), 146 Ill. 227, 33 N. E. 858, 20 L. R. A. 247, wherein the court affirmed a decree directing the sale of lands, thereby affecting the titles of certain infants and the contingent interests of unborn persons. It was made to appear there that the lands were unproductive and subject to heavy charges by reason of their proximity to Chicago, but that they might be sold for a substantial sum, which upon being invested or loaned would yield to the persons interested a considerable income. The decision is justified on the ground, that, where it is for the benefit of infants, courts of equity have the power, by virtue of their general jurisdiction over the estates of minors and others under disabilities, to authorize a conversion of real estate into personalty and of personalty into realty.

"Each of the cases above cited and discussed involved an estate held in trust for the use of life-tenants and contingent remaindermen, including persons not in being. While the fact that an express trust is involved may clothe a court of chancery with jurisdiction to direct its administration in order that its subject-matter may be preserved and its beneficiaries protected in their rights, yet some other equitable consideration must exist in order that the court may properly exercise its power, by directing the conversion of trust property into some other form where such con-

version is not specifically authorized by the instrument of trust. In each of such cases, such other consideration consisted in that it was made to appear that the trust property was likely to be lost, or that it was subject to great depreciation, unless such conversion was directed and consummated. A like consideration exists here; and we do not believe that the mere fact that no express trust is involved stands as a bulwark against action by the court. To this effect is Gavin *v.* Curtin (1898), 171 Ill. 640, 49 N. E. 523, 40 L. R. A. 776, where nó express trust was involved. The lands there were held under a devise to testator's daughter for life, with contingent interests over to others, including persons not in being. A decree directing the sale, on a showing that the lands were comparatively unproductive, and that the charges and expenses very much exceeded the income, was approved; the court saying in substance that, independent of the existence of a trust, a court of equity has jurisdiction to intervene where it is made to appear that otherwise a substantial right would be lost, and that, in the presence of some exigency which makes the action of the court practically indispensable, it properly exercises its power. To the same effect is Baldridge *v.* Coffey (1900), 184 Ill. 73, 56 N. E. 411, following and approving Gavin *v.* Curtin, supra. See also Ruggles *v.* Tyson (1899), 104 Wis. 500, 79 N. W. 766, 81 N. W. 367, 48 L. R. A. 809; Clyburn *v.* Reynolds (1888), 31 S. C. 91, 9 S. E. 973; Springs *v.* Scott (1903), 132 N. C. 548, 44 S. E. 116; Mayall *v.* Mayall (1896), 63 Minn. 511, 516, 65 N. W. 942; Bennett *v.* Nashville Trust Co. (1912), 127 Tenn. 126, 153 S. W. 840, 46 L. R. A. (N. S.) 43, Ann. Cas. 1914A, 1045.

"Respecting the first two questions suggested as presented for consideration, we conclude that the trial court in the exercise of its chancery powers is clothed with jurisdiction to direct the sale and conversion of lands in fee held by a life-tenant, with conditional estates over to unascertained persons, where emergencies arise rendering action by the court imperative in order that the persons interested may be protected in their legal rights, and the body of the estate preserved for them; and that while such extraordinary powers should be used with caution, in the case at bar the court properly exercised such powers to the end indicated.

"Directing our attention more particularly to the third question above suggested, all persons interested in the subject-matter of this

proceeding, and who are in being, are before the court. The life-tenants and owners of such qualified fee, which as we have said is an estate of inheritance, are parties. The owners of the contin-gent interests cannot be made parties, as they are not in being. If in being, they would be necessary parties. The persons before the court are interested in urging upon the attention of the court every consideration that such unborn persons would be interested in presenting, if in being and parties to the proceeding. Under such circumstances, and where the exigencies of the situation re-quire action on the part of courts, impelled by practical necessity, they assume jurisdiction. Decrees entered under such circum-stances are binding on persons not in being. We conclude that a proper decree entered in this proceeding is binding on the unborn children of testator's sons, and that the fifth conclusion of law is correct. In addition to authorities above cited, see the following: Bofil v. Fisher, (1850), 3 Rich. Eq. 1, 55 Am. Dec. 627; Downey v. Seib (1906), 8 L. R. A. (N. S.) 49, note; Powell v. Wright (1844), 7 Beav. 444; Kent v. Church of St. Michael (1892), 136 N. Y. 10, 32 N. E. 704, 18 L. R. A. 631, 32 Am. St. Rep, 693; Dunham v. Doremus (1897), 55 N. J. Eq. 511, 37 Atl. 62; Story Eq. Pleading, §§ 145, 146; Freeman, Coten. and Part. (2 ed.) § 482; Mead v. Mitchell (1858), 17 N. Y. 210, 72 Am. Dec. 455; Rutledge v. Fishburne (1903), 97 Am. St. Rep. note p. 766; Cheesman v. Thorne (1833), 1 Edw. Ch. (N. Y.) 629; Fox v. Fee (1897), 24 App. Div. 314, 49 N. Y. Supp. 292; Carter v. White (1904), 101 Am. St. Rep. 870, note; Coquillard v. Coquil-lard, supra. . . .

"A proceeding such as this is maintainable only on the theory that, by reason of some exigency growing out of changed condi-tions, it becomes necessary to convert lands into personalty in order that the body of the estate may be preserved. The courts are in accord that in order to the validity of the proceedings the funds must be substituted for the lands, all interests and estates in the latter transferred to the former, and that the fund must be ordered administered as nearly as possible as the lands would have been handled had there been no conversion. Noble v. Cromwell (1858), 26 Barb. (N. Y.) 475; Gavin v. Curtin, supra; Mead v. Mitchell, supra; Cheesman v. Thorne, supra; Bofil v. Fisher, supra; Mon-arque v. Monarque (1880), 80 N. Y. 320, 326; Barnes v. Luther

(1894), 77 Hun, 234, 28 N. Y. Supp. 400; Rutledge v. Fishburne, supra, note page 767 " (97 Am. St. R.)

In the case under consideration, the court had jurisdiction of the subject-matter, and all persons in esse to be affected by the decree were before the court. One of them was John Moore Walton, the only child of the testator. The only possible issue of the testator, within the meaning of the will, not in esse, would be issue of John Moore Walton. They would be in the same class with him, and would be bound by the decree, as it was binding upon him. Under the circumstances the court had jurisdiction to render the decree; and this being the controlling question, there was no error in overruling the demurrer.

*Judgment affirmed. All the Justices concur.*